UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


   UNITED STATES OF AMERICA,*          Docket No. 12CR084
                             *
                             *
                             *
                             *          Buffalo, New York
              v.             *          February 14, 2013
                             *          9:06 a.m.
                             *
   HAROLD HOWARD,            *
                             *
              Defendant.     *
                             *
   * * * * * * * * * * * * * *


                    TRANSCRIPT OF TRIAL, VOLUME 7
                  BEFORE THE HONORABLE RICHARD J. ARCARA
                    UNITED STATES DISTRICT JUDGE



   APPEARANCES:


   For the United States:       MELISSA MARANGOLA, ESQ. and
                                Assistant United States Attorney
                                GEORGE BURGASSER, ESQ.
                                Assistant United States Attorney



   For the Defendant:           ANTHONY PENDERGRASS




   Court Reporter:              YVONNE M. GARRISON, RPR
                                Official Court Reporter

(Jury present in the courtroom at 9:06 a.m.)

THE CLERK:  Criminal Action 2012-84A, United States versus Harold Howard, jury trial.

Counsel, please state your name and the party you represent for the record.

MS. MARANGOLA:  Melissa Marangola on behalf of the government.  Good morning.

MR. BURGASSER:  George Burgasser for the government, Your Honor.

MR. PENDERGRASS:  Good morning, Your Honor.  Anthony Pendergrass for Harold Howard.

THE COURT:  Good morning.

Well, ladies and gentlemen, we've reached that part of the trial where I will be instructing you on the law.  It's going to take a little while.  And we may take a short little break sometime halfway through or to give you a little break.

By the way, those photographs over there are photographs of all the witnesses in the order in which they testified.  That will be available to you in the jury deliberation room.  Sometimes it's hard to remember what people look like.

And a number of years ago I had a case in which a lot of the witnesses kind of looked alike.  It was like a three-month trial, and I said how are they going to remember who is who.  So we started using the photographs, and I think

that it's helpful.

Now, many of the instructions I will give you it sounds like I'm repeating myself, and I will be repeating myself many, many times, but it's also in a different context. Didn't he just tell us that? Didn't he just say that a little while ago? If I did, and it will happen, it's always in a different context on what I'm trying to explain to you.

So just bear with me. It isn't like I keep repeating myself, but I have to do that in order to make sure that the elements and the principles that you will be required to apply will be given in the context in what is being given to you.

All right. Now, ladies and gentlemen, you're about to enter your final duty which is to decide the fact issues in this case, and before you do that, I'm going to instruct you on the law. And you must pay close attention to me now, and I will go as slowly as I can and be as clear as possible.

I told you at the very start of the trial that your principal function during the taking of testimony would be to listen very carefully and observe each witness who testifies. It's been obvious to me and to counsel that you have faithfully discharged this duty. You have remained interested throughout this trial, and it's evident that you followed testimony with close attention. I ask you to give me that same careful attention as I instruct you on the law.

You have now heard all the evidence in this case as

well as the final arguments of the lawyers for the parties.  My duty at this point is to instruct you as to the law.  It is your duty to accept these principles of law and apply them to the facts as you determine them, just as it's been my duty to preside over the trial and to decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not in any way be concerned about the wisdom of any rule that I state regardless of any opinion that you may have as to what the law may be or ought to be.  It would violate your sworn duty to base a verdict upon any other view of the law than that which I give to you.

Your final role is to pass upon and decide the fact issues that are in the case.  You as members of the jury are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  And you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

I will later discuss with you on how to pass upon the credibility or believability of witnesses.  In determining the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, and in their objections or in their questions is not evidence.

In this connection you should bear in mind that a question put to a witness is never evidence.  It's only the answer which is in evidence.  Nor is anything that I may say during the trial or may say during these instructions with respect to a fact matter to be taken in substitution for your own independent recollection.  What I say is not evidence.

The evidence before you consists of the answers given by the witnesses, the testimony that they gave as you recall it, and the exhibits that are received in evidence.  The evidence does not include questions.  Only the answers are evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the guilt of the defendant has been proven beyond a reasonable doubt.

I also ask you not to draw any inference from the fact that, upon occasion, I ask questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict that you should render or whether any of the witnesses may have been more credible than any other witness. You are expressly to understand that the Court has no opinion as to the verdict that you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice as to any party.

In determining the facts, the jury is reminded that before each member was accepted and sworn to act as a juror, he or she was asked questions concerning competency, qualifications, fairness, and freedom from prejudice and bias. On the faith of those answers, the jurors were accepted by the parties. Therefore, those answers are as binding on each of you now as they were then and should remain so until the jury is discharged from consideration of this case.

Now, you are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your duty in an attitude of complete fairness and impartiality. The case is important to the government. Enforcement of criminal laws is a matter of prime concern to the community.

Equally it's important to the defendant who is charged with serious crimes.

The fact that the prosecution is brought in the name of the United States entitles the government to no greater consideration than accorded to any party in the litigation. By the same token, it is entitled to no less consideration. All parties, whether the government or individuals, stand as equals at the bar of justice.

Now, it is the duty of the attorney for each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and the duty to ask the Court to make rulings of law and to request conferences out of the hearing of the jury. All those questions of law must be decided by me, the Court.

You should not show any prejudice against an attorney or the client because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury or asked the Court for a ruling on the law.

As I've already indicated, my rulings and the admissibility of evidence do not indicate any opinion about the weight or the effect of such evidence. You, ladies and gentlemen, are the sole judges of the credibility of all the witnesses and the weight and effect of all of the evidence.

Your verdict must be based solely on evidence

developed at trial or the lack of evidence.  It would be
improper for you to consider in reaching your decision as to
whether the government sustained its burden of proof any
personal feelings that you may have about a defendant's race,
religion, national origin, sex, or age.

It would be equally improper for you to allow any
feelings that you might have about the nature of the crimes
charged to interfere with your decision-making process.  To
repeat, your verdict must be based exclusively upon the
evidence or lack of evidence in this case as to each count as
charged.

Under your oath as jurors, you are not to be swayed
by sympathy.  You are to be guided solely by the evidence in
this case.  And the crucial question that you must ask
yourselves as you sift through the evidence is has the
government proven the guilt of the defendant beyond a
reasonable doubt.  It is for you alone to decide whether the
government has proven that the defendant is guilty of the
crimes charged solely on the basis of the evidence and subject
to the law as I charge you.

It must be clear to you that once you let fear or
prejudice or bias or sympathy interfere with your thinking,
there is a risk that you will not arrive at a true and just
verdict.

If you have a reasonable doubt as to the defendant's

guilt, you should not hesitate for any reason to find a verdict of not guilty or acquittal on the count or counts that you are considering.

But, on the other hand, if you should find that the government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy for the defendant or for any other reason to render a verdict of guilty on the count or counts that you are considering.

Now, there are two types of evidence which you may properly use in deciding whether a defendant is guilty or not guilty.  One type of evidence is called direct evidence.  Direct evidence is where a witness testifies to what he or she saw or observed.  In other words, when a witness testifies about what is known to him or her of his or her own knowledge, by virtue of his or her own senses and what he or she sees, feels, touches or hears, that is called direct evidence.

There's circumstantial evidence is evidence is evidence which tends to prove a disputed fact by a proof of other facts.  There's a simple example of circumstantial evidence which is often used here.  Assume when you came in the courthouse this morning the sun was shining and it was a nice day.  Assume that you cannot look out those blinds and that you cannot actually see what's going on outside.

Now, as you're sitting here, someone walked in with

an umbrella which was dripping wet. Someone else then walked

in with a raincoat which was also dripping wet. Now, you

cannot look out side of the courtroom and you cannot see

whether or not it's raining. So you have no direct evidence of

that fact.

But on the combination of facts which I asked you to

assume, it would be reasonable and it would be logical for you

to conclude that it has been raining. That is all there is to

circumstantial evidence. You infer on the basis of reason and

experience and common sense from an established fact, someone

walking in here with a wet umbrella or raincoat, the existence

or non-existence of some other fact that it had been raining.

Circumstantial evidence is of no less value than

direct evidence. As a general rule, the law makes no

distinction between direct and circumstantial evidence and

simply requires that before convicting a defendant, the jury

must be satisfied of the defendant's guilt beyond a reasonable

doubt from all of the evidence in the case.

Now, as I stated, and I want to emphasize, that any

lawyer's question is not evidence. At times a lawyer on

cross-examination may have incorporated into a question a

statement which assumes certain facts to be true and asked if

the statement were true. Now, if the witness denies the truth

of the statement and if there's no evidence in the record that

the assumed fact is true, then you may not consider it to be

true simply because it was contained in the lawyer's question.

The famous example of this is a lawyer's question of a married witness:  When did you stop beating your wife?  Now, you are not entitled to consider as true the assumed fact that he ever beat his wife unless the witness himself indicated that he had or unless there is some other evidence in the record that he had beaten his wife.

In short, questions are not evidence, answers are. However, answers must be considered in connection with the question that's being asked.

Now, the evidence in this case consists of the sworn testimony of witnesses and the exhibits that were received in evidence.  Exhibits which have been marked for identification but not received may not be considered by you as evidence. Only those exhibits received may be considered as evidence.

Similarly, you are to disregard any testimony when I had ordered it to be stricken.  As I indicated before, only the witness' answers are evidence, and you are not to consider a question as evidence.  Similarly, statements of counsel are not evidence.

You should consider the evidence in light of your own common sense and experience, and you may draw reasonable inferences from the evidence.  Anything that you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded.

1       Now, there was a stipulation in this case, and a

2  stipulation is an agreement among the parties that a certain

3  fact is true.  You should regard such agreed facts as true.

4       Now, during the trial you may have heard the

5  attorneys use the term "inference."  In their arguments they

6  may have asked you to infer on the basis of your reason, your

7  experience, and common sense from one or more established facts

8  the existence of some other fact.

9       Now, an inference is not a suspicion and it's not a

10  guess.  It is a reasoned logical decision to conclude that a

11  disputed fact exists on the basis of another fact which you

12  know exists.  There are times when different inferences may be

13  drawn from the facts whether proved by direct or by

14  circumstantial evidence.

15       The government asked you to draw one set of

16  inferences, and the defendant asked you to draw another.  It is

17  for you and you alone to decide what inferences that you will

18  draw.

19       However, the process of drawing inferences from facts

20  in evidence is not a matter of guesswork or a speculation.  An

21  inference is a deduction or a conclusion which you, the jury,

22  are permitted to draw but not required to draw from the facts

23  which have been established either by direct or by

24  circumstantial evidence.

25       In drawing inferences you should exercise your common

1    sense.  You are permitted to draw from the facts which you find

2    to be proven such reasonable inferences as would be justified

3    in light of your experience.

4         Here again, let me remind you that whether based upon

5    direct or circumstantial evidence or upon the logical or

6    reasonable inferences drawn from such evidence, you must be

7    satisfied of the guilt of the defendant beyond a reasonable

8    doubt before you may convict.

9         Now, the fact that one party called most of the

10   witnesses or may have introduced more evidence than the other

11   does not mean that you should necessarily find the facts in

12   favor of the side offering more witnesses.  By the same token

13   you do not have to accept the testimony of any witness who has

14   not been contradicted or impeached if you find the witness

15   simply not to be credible.

16        You are also to decide which witnesses to believe and

17   which facts are true.  To do this, you must look at all the

18   evidence, drawing upon your own common sense and personal

19   experience.  After examining all the evidence, you may decide

20   that the party calling more witnesses has not persuaded you

21   because you do not believe its witnesses.

22        I will now discuss with you the criteria for

23   evaluating credibility, and you should keep in mind that the

24   burden of proof is always on the government.  The defendant is

25   not required to call any witnesses or offer any evidence since

1  he is presumed to be not guilty.

2         Now, you've had an opportunity to observe all the

3  witnesses.  It's now your job to decide how believable each

4  witness was in his or her testimony.  You are the sole judges

5  of the credibility of each witness and the importance of his or

6  her testimony.

7         In assessing credibility, you should carefully

8  scrutinize all the testimony of each witness, the circumstances

9  under which each witness testified, and any other matter in

10  evidence which may help you to decide the truth and the

11  importance of each witness' testimony.

12         Your decision whether or not to believe a witness may

13  depend upon how the witness impressed you.  Was the witness

14  candid, frank, and forthright or did the witness seem as if he

15  or she was hiding something, being evasive, or suspect in some

16  way?  How the did the way the witness testified on direct

17  examination compare with how the witness testified on cross

18  examination?

19         Was the witness consistent with his or her testimony

20  or did he or she contradict himself or herself?  Did the

21  witness appear to know what he or she was testifying about?

22  Did the witness strike you as someone who is trying to report

23  his or her knowledge accurately.

24         How much you choose to believe a witness may be

25  influenced by the witness' bias.  Does the witness have a

relationship with the government or the defendant which may
affect how he or she testified?  Does the witness have some
incentive, loyalty, or motive that might cause him or her so
shade the truth?  Does the witness have some bias, prejudice,
or hostility that may have caused the witness, consciously or
not, to give you something other than a completely accurate
account of the facts that he or she is testifying to?

Even if the witness was impartial, you should
consider whether the witness had an opportunity to observe the
facts he or she testified about.  You should also consider the
witness' ability to express himself or herself.

Ask yourself whether the witness' recollection of the
facts stands up in light of all the other evidence.  In other
words, what you must try to do in deciding credibility is to
size up a person in light of his or her demeanor, the
explanations given, and in light of all the other evidence in
this case, just as you would in any other important matter that
you are trying to decide if a person is truthful,
straightforward, and accurate in his or her recollection.  In
deciding the question of credibility, remember, you should use
your common sense, your good judgement, and your experience.

Now, you heard the testimony of some law enforcement
officials.  The fact that a witness may be employed as a law
enforcement official does not mean his or her testimony is
necessarily deserving of more or less consideration or greater

or lesser weight than that of an ordinary witness.  At the same token, it's quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his or her testimony may be colored by personal or professional interest in the outcome of the case.  It is your decision after reviewing all the evidence whether to accept the testimony of law enforcement witnesses and to give that testimony whatever weight, if any, you find it deserves.

Now, you've heard witnesses who testified that they were actually involved in the planning and carrying out the crimes -- the crimes charged in the indictment.  There's been a great deal said about what we call so-called accomplice witnesses in the summation of counsel and whether you should believe them or not.

The government argues it's permitted to do so and take its witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior of others.

For those very reasons, the law allows the use of accomplice testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for a conviction if the jury finds the testimony established guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is such nature that it must be scrutinized with great

care in lieu of particular caution when deciding how much of the testimony you believe.

Now, I've given you some general considerations on credibility. I will not repeat them here, nor will I repeat all the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether these accomplices or accomplice would benefit more by lying or by telling the truth. Was the testimony made up in some way because they believe or hope that they would somehow receive favorable treatment by testifying falsely or did they believe that their interest would be best served by testifying truthfully?

If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him or her to lie, or was it one that would cause him or her to tell the truth? Did this motivation color his or her testimony? In sum, you should look at all the evidence in deciding whatever credence and what weight, if any, that you want to give to the accomplice's testimony.

In connection with your evaluation of the credibility of witnesses, you should specifically consider any evidence of resentment or anger some government witnesses may have towards the defendant. Evidence that a witness is biassed, prejudiced, or hostile toward the defendant requires you to view that

witness' testimony with caution and weigh it with care and subject it to close and searching scrutiny.

In evaluating the credibility of witnesses, you should take into account any evidence that a witness who testified may benefit in some way from the outcome of this case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interest.

Therefore, if you find any witness whose testimony you're considering may have an interest in the outcome of the trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. It is for you to decide to what extent, if at all, the witness' interest had affected or colored his or her testimony.

Now, you've heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness' trial testimony. If you find that a witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether

1    it was an innocent mistake, whether the inconsistency concerns

2    an important fact, or whether it had to do with small detail,

3    whether a witness had an explanation for the inconsistency, and

4    whether the explanation appealed to your common sense.

5            It is exclusively your duty based upon all the

6    evidence and your own good judgement to determine whether the

7    prior statement was inconsistent and, if so, how much, if any,

8    weight to be given to the inconsistent statement in determining

9    whether to believe all or part of the witness' testimony.

10           In this case I've permitted certain witnesses to

11   express their opinions about matters that are an issue.  A

12   witness may be permitted to testify to an opinion on those

13   matters about which he or she has special knowledge, skill,

14   experience, and training.  Such testimony presented to you is

15   on the theory that someone who is experienced and knowledgeable

16   in the field can assist you in understanding the evidence or in

17   reaching an independent decision on the facts.

18           In weighing the opinion testimony, you may consider

19   the witness' qualifications, his or her opinions, the reason

20   for testifying, as well as all the other considerations that

21   ordinarily apply.  When you are deciding whether or not to

22   believe a witness' testimony, you may give opinion testimony

23   whatever weight, if any, that you find it deserves in light of

24   all the other evidence in this case.  You should not, however,

25   accept opinion testimony merely because I allowed the witness

to testify concerning his or her opinion, nor should you substitute it for your own reason, judgement, and common sense. The determination of the facts, ladies and gentlemen, rests solely with you.

Now, the defendant has pleaded not guilty to the charges in the indictment. To convict the defendant, the burden is on the prosecution to prove the defendant's guilt of each element of the charge beyond a reasonable doubt. This burden never shifts to a defendant for the simple reason that the law presumes the defendant to be innocent and never imposes upon a defendant in a criminal case the burden or the duty of calling any witnesses or producing any evidence.

In other words, the defendant starts off with a clean slate, that is, presumed innocent of each charge until such time, if ever, that you as a jury are satisfied that the government has proven the defendant guilty on a given charge beyond a reasonable doubt.

Now, during the trial you may have heard testimony of witnesses and the argument by counsel that the government did not utilize specific investigative techniques. You may consider these facts in deciding whether the government has met its burden of proof. As I told you, you should look at all the evidence or lack of evidence in deciding whether the defendant is guilty.

However, you are also instructed that there is no

legal requirement that the government use any specific

investigative techniques to prove its case.  Law enforcement

techniques are not your concern.  Your concern, as I have said,

is to determine whether or not the evidence or lack of evidence

has proven the defendant's guilt beyond a reasonable doubt.

Now, the defendant did not testify in this case, and

under or Constitution he has no obligation to testify or to

present any evidence because it is the government's burden to

prove the defendant guilty beyond a reasonable doubt.  That

burden remains with the government throughout the entire trial

and never shifts to a defendant.  The defendant is never

required to prove that he is innocent.

You may not attach any significance to the fact that

the defendant did not testify.  No adverse inferences against

him may be drawn by you because he did not take the stand.  You

may not consider this against the defendant in any way in your

deliberations in the jury room.

Just one moment, please.

Now, with these instructions in mind, let's turn to

the charges.  One second.

All right.  With these instructions in mind, let's

turn to the charges against the defendant that's contained in

the indictment.

I remind you that an indictment itself is not

evidence.  It merely describes the charges made against the

1  defendant, it's an accusation, and may not be considered by you

2  as any evidence of guilt of a defendant.

3          In reaching your determination of whether or not the

4  government has proven the defendant guilty beyond a reasonable

5  doubt, you may consider only the evidence introduced or lack of

6  evidence and only what is charged in the indictment.  The

7  defendant has denied that he is guilty of the charges set

8  forth.

9          The indictment contains a total of five counts.  Each

10  count charged the defendant with a different crime.  You must

11  consider each count separately and return a separate verdict of

12  guilty or not guilty for each.  Whether you find the defendant

13  guilty or not guilty as to one offense should not affect your

14  verdict as to the other offenses charged.

15          Now, you will hear shortly that to sustain it's

16  burden of proof for some of the elements of some counts the

17  government must prove the defendant acted knowingly or

18  willfully or intentionally.  I want to take a moment to define

19  those terms for you.

20          A person acts knowingly if he acts intentionally and

21  voluntarily and not because of ignorance, mistake, accident or

22  carelessness.  Whether the defendant acted knowingly may be

23  proven by the defendant's conduct and by all the facts and

24  circumstances surrounding the case.

25          Willful means to act with knowledge that one's

conduct is unlawful and with the intent to do something the law forbids, that is to say, with bad purpose and in disregard of the law.  The defendant's conduct was not willful if it was due to negligence, inadvertence, or mistake.

Before you can find the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposely and that the defendant's acts must have been the product of the defendant's conscious objective rather than the product of mistake or accident.

Knowledge, willfulness, and intent involve the state of a person's mind.  It's often been said to juries that a state of one's mind is a fact as much as a state of his digestion.  Accordingly, this fact you are called upon to decide.

Medical science has not yet devised an instrument which can record what is in one's mind in the distant past. Rarely is direct proof available to establish a state of one's mind.  This may be inferred from what she or he says, his actions, his words, his conduct at the time of the occurrence of the certain events.

The intent by which an act is done is more often clearly and conclusively shown by the act itself or by a series of acts than by the words or explanation of an act uttered long after its occurrence.  Accordingly, intent, willfulness, and

knowledge are usually established by surrounding facts and circumstances as of the time the acts in question occurred or the events took place and the reasonable inferences to be drawn from them.

Now, the defendant is not charged with committing any other crime other than the offense contained in the indictment. You have heard evidence of other acts allegedly committed by the defendant. When that evidence was introduced -- I want to emphasize to you now that you are not to consider that evidence for any purpose and you're only to return a verdict as to the charges that are in the indictment.

You may not draw any inferences, favorable or unfavorable, toward the government or the defendant on trial from the fact that certain persons were not named as defendants in the indictment, whether certain persons were named as coconspirators but not indicted. The circumstances that these individuals who are not indicted must play no part in your deliberations.

Whether a person should be named as a coconspirator or indicted as a defendant is a matter within the sole discretion of the United States Attorney and the grand jury. Therefore, you may not consider it in any way in reaching your verdict as to the defendant on trial.

Now, as I've said many times here, the government must prove the defendant guilty beyond a reasonable doubt. The

question naturally is what is a reasonable doubt.  The words
almost define themselves.

It is a doubt that's based upon reason and common
sense.  It is a doubt that a reasonable person has after
carefully weighing all the evidence or lack of evidence.  It is
a doubt about what caused a reasonable person to hesitate to
act in a manner of importance of his or her personal life.

Proof beyond a reasonable doubt must, therefore, be
proof of such a convicting character that a reasonable person
would not hesitate to rely and act upon it in the most
important of his or her own affairs.  A reasonable doubt is not
a caprice or a whim.  It is not speculation or suspicion.  It's
not an excuse to avoid the performance of a unpleasant duty.
And it's not sympathy.

In a criminal case the burden at all times is upon
the government to prove guilt beyond a reasonable doubt as to
each crime charged.  The law does not require the government to
prove beyond all possible doubt.  Proof beyond a reasonable
doubt is sufficient to convict.  The burden never shifts to the
defendant, which means it's always the government's burden to
prove each of the elements of the crime charged beyond a
reasonable doubt.

If after a fair and impartial consideration of all
the evidence you have a reasonable doubt, it is your duty to
find the defendant not guilty.

On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of the defendant's guilt beyond a reasonable doubt, you should vote to convict.

Now, Count 1 in the indictment charges the defendant with a narcotic conspiracy in violation of Title 21 United States Code Section 846.  Specifically, Count 1 charges as follows:  That between in or about November 2008, the exact date being unknown, and on or about November 16th, 2011, in the Western District of New York and elsewhere, the defendant, Harold Howard, did knowing willfully and unlawfully combine, conspire, and agree with others, known and unknown, to commit the following offenses; that is, to possess with the intent to distribute and to distribute 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21 United States Code Section 841(a)(1) and 841(b)(1)(A), all in violation of Title 21 United States Code Section 846.

Section 846 as pertinent to this charge states as follows:  Any person who conspires to possess with intent to distribute and to distribute the controlled substance in violation of Section 841(a)(1) or Title 21 United States Code shall be guilty of an offense against the United States.

In this case the defendant is accused in Count 1 of having been a member of a narcotic conspiracy in violation of

federal law.  A conspiracy is kind of a criminal partnership, a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to violate federal law is an independent offense. It is separate and distinct from any actual violation of any specific federal laws which the law refers to as substantive crimes.

Indeed, you may find the defendant guilty of the crime of conspiracy to commit a narcotic conspiracy even though the substantive crime which was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy standing alone a separate crime even if the conspiracy is not successful.  That is because the collective criminal activity poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

In order to satisfy its burden of proof with respect to Count 1 of the indictment, the government must establish each of the following two essential elements beyond a reasonable doubt:  First, that two or more persons entered into an unlawful agreement charged in the indictment starting on or about November 2008, and ending on or about November 16th, 2011; second, that the defendant knowingly and willfully became a member of the conspiracy.

1       The first element which the government must prove

2  beyond a reasonable doubt to establish the offense of

3  conspiracy is that two or more persons entered into an unlawful

4  agreement charged in the indictment.

5       In order for the government to establish this

6  element, you need not find that the alleged members of the

7  conspiracy met together and then entered into any expressed or

8  formal agreement.  Similarly, you need not find that the

9  alleged conspirators, as stated, in words or writing what the

10  scheme was, its object or purpose, or every precise detail of

11  the scheme, or the means by which its object or purpose was to

12  be accomplished.  Indeed, it is sufficient for the government

13  to show that the conspirators tacitly came to a mutual

14  understanding to accomplish an unlawful act by means of a joint

15  plan or common design.

16       You may, of course, find the existence of the

17  agreement to disobey or disregard the law had been established

18  by direct proof.  However, since conspiracy is by its very

19  nature characterized by secrecy, you may also infer its

20  existence from the circumstances of this case and the conduct

21  of the parties involved in a very real sense.

22       Then, in the context of conspiracy cases, actions

23  often speak louder than words.  In this regard, you may in

24  determining whether an agreement existed here consider the acts

25  and statements of all those you find to be participants as

proof that a common desire existed on the part of the persons
charged to act together for the accomplishment of an unlawful
purpose.

The second element which the government must prove
beyond a reasonable doubt to establish the offense of
conspiracy is that the defendant acted knowingly, willfully,
and voluntarily and became a member or a participant of the
conspiracy.

If you are satisfied that the conspiracy charged in
the indictment exists, you must ask yourselves who are the
members of that conspiracy.  In deciding whether the defendant
was, in fact, a member the conspiracy, you should consider
whether, based upon all the evidence, it appears that the
defendant knowingly and willfully joined the conspiracy, did he
participate with knowledge of its unlawful purpose and with the
specific intention of furthering its business or objective as
an associate or worker.

In that regard, it has been said that in order for
the defendant to be deemed a participant in the conspiracy, he
must have had a stake in the venture or its outcome.  You are
instructed while proof of a financial interest in the outcome
of the scheme is not essential if you find the defendant had
such an interest that is a factor which may properly be
considered in determining whether or not the defendant was a
member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must find that he knowingly joined in the unlawful agreement.  The key question, therefore, is whether the defendant joined the conspiracy with an awareness of his -- the sum of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his or her own acts or statements as well as those of other alleged coconspirators and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved.  In that connection I instruct you that to become a member of the conspiracy, the defendant need not know the identities of each and every other member, nor need he have been apprised of all other activities.

Moreover, the defendant need not have been fully informed of all the details or the scope of the conspiracy in order to justify an inference of knowledge on his part.  Furthermore, the defendant need not have joined in all of the conspiracy unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt.  A conspirator's liability is not measured by the extent or the duration of his participation.  Indeed, each member may perform a separate and

distinct act and may perform them at different times.  Some

conspirators play major roles while others play minor parts in

the scheme.  An equal role is not what is required by the law.

In fact, every single act may be sufficient to draw a defendant

within the gambit of the conspiracy.

I want to caution you, however, that the defendant's

mere presence at the scene of the alleged crime does not by

itself make him a member of the conspiracy.

Similarly, mere associations with one or more members

of the conspiracy does not automatically make the defendant a

member.  A person may know or be friends with a criminal

without being a criminal himself.  Mere similarity of conduct

or the fact that they may have been assembled together in

common aims and interests is not necessarily established proof

of the existence of a conspiracy.

I also want to caution you that mere knowledge or

acquiescence without participation in the unlawful plan is not

sufficient.

Moreover, the fact that the acts of the defendant

without knowledge merely happen to further the purposes or

objectives of the conspiracy does not make the defendant a

member, nor is required under the law.  What is necessary is

that the defendant must have participated with knowledge of at

least some of the purposes or objectives of the conspiracy and

with the intention of aiding in the accomplishment of those

1    unlawful ends.

2           In sum, the defendant with an understanding of the

3    unlawful character of the conspiracy must have intentionally

4    engaged, advised, or assisted in it with the purpose of

5    furthering the illegal undertaking.  He thereby becomes a

6    knowing and willing participant in an unlawful agreement; that

7    is to say, a conspirator.

8           Now, if you find that the government has proven

9    beyond a reasonable doubt the two elements that I have just

10   described to you, then there is one more issue that you must

11   decide, and I'll provide you with a special verdict form asking

12   you about the type and amount of drugs that the conspiracy

13   contributed or possessed with intent to distribute.

14          The burden is on the government to establish the type

15   and the amount of drugs alleged in Count 1 beyond a reasonable

16   doubt.  Remember, you should address this issue and complete

17   the form only if you find the first -- if you only find the

18   first two elements that have been established.  If you do not

19   find the government has proven both of the two elements, then

20   you need not complete that portion of the form.  I will

21   instruct you on the special verdict form shortly.

22          Now, you will recall that I have admitted evidence

23   against the defendant, acts and statements of others because

24   these acts and statements were committed by persons who the

25   government charges were also co-confederates or coconspirators

of the defendant. The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy.

Conspiracy is often referred to as a partnership in crime. Thus, as any other type of partnerships, when people enter into a conspiracy to accomplish an unlawful purpose or unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, reasonable foreseeable acts, declarations, statements, and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy are deemed under the law to be the acts of all the members. Now, all the members are responsible for such acts, declarations, statements, and omissions.

If you find beyond a reasonable doubt the defendant was a member of the conspiracy charged in the indictment, that any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of the conspiracy may be considered against the defendant. This is even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of coconspirators in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence and in furtherance of the

1  unlawful scheme.  If the acts were done and the statements made

2  by someone whom you do not find to have been a member of the

3  conspiracy or if they were done or said in furtherance of the

4  conspiracy, then they may not be considered by you as evidence

5  against the defendant.

6        You are instructed as a matter of law that cocaine is

7  a controlled substance.  It is solely for you, the jury,

8  however, to determine whether or not the government has proven

9  beyond a reasonable doubt that the defendant possessed with

10 intent to distribute a mixture or substance containing cocaine.

11 The government must prove that the materials that the defendant

12 was charged with possessing with intent to distribute were --

13 or was, in fact, cocaine.

14        The government may prove this either through direct

15 evidence or through circumstantial evidence.  An example of

16 direct evidence is the testimony of a chemist who has done a

17 chemical analysis of the materials -- or materials.

18        Circumstantial evidence will be evidence from which

19 you can infer that the material or materials were cocaine such

20 as testimony concerning the names used by the defendant or

21 others to refer to the material or materials or testimony about

22 the materials' appearance.

23        Whether the government relies on direct or

24 circumstantial evidence to prove the materials at issue were

25 cocaine, it must prove so beyond a reasonable doubt.

As I've instructed you, the government must prove beyond a reasonable doubt that the alleged conspirators possessed the drugs.  The legal concept of possession may differ from the everyday usage of the term.  So I'll explain to you in some detail.

Actual possession is what most of us think of as possession; that is, having physical custody or control of an object.  For example, if you find the conspirator had the drugs on his person, you may find that he had possession of the drugs.

However, a person need not have actual physical custody of an object in order for it to be a legal possession of it.  If an individual has the ability and intent to exercise substantial control over the object that he does not have in his physical custody, then he is in possession of that item.

For example, this from everyday experience would be a person's possession of items that he keeps in a safe deposit box or his bank.  While a person does not have physical custody of those items, he exercises substantial control over them and so has legal possession of them.

The law also recognizes that possession may be sole or joint.  If one person alone possesses something, that is called sole possession.  However, it is possible that more than one person may have the power and intention to exercise control over drugs.  This is called joint possession.  If you find that

a conspirator had such power and intention, then he possessed
the drugs under this element even if he did not possess the
drugs jointly with another.

There is an example I'll give to you here. This is
just an illustration of what I'm talking about. Suppose A is
negotiating the price of heroin with C. Standing next to A is
B who has several envelopes of heroin in his pocket. After a
period of negotiation, A directs B to hand over to C a few of
the envelopes. C then hands some of the money.

In this situation you can find that B had possession
of the narcotics because he had them in his pocket. However,
you could also find that he had possession of the narcotics
because of his proximity to the drugs, his association with B,
the person in actual possession of them, and his negotiations
over the price. This example is not inclusive. It's just
simply meant to illustrate these concepts.

Possession of drugs cannot be found solely on the
ground that the alleged conspirator was near or close to the
drugs, nor can it be found simply because the conspirator was
present at the scene where the drugs were involved or solely
because a conspirator associated with a person who did control
the drugs or the property where they were found. However,
these factors may be considered by you in connection with all
the other evidence in making your decision whether a defendant
possessed the drugs.

Now, the alleged conspirator may own or have control over the place where the controlled substances are found such as an apartment or a vehicle where a conspirator is the sole person having such ownership or control.  This control is significant evidence of control over the controlled substance themselves.  It's constructive possession of the controlled substance.

You should note, however, that an alleged conspirator's sole possession or control of a residence or a vehicle does not necessarily mean that the conspirator had control and constructive possession of the controlled substance found in them.  A conspirator may also share control of a place where the controlled substances are found in.

In this event, the controlled substance may be possessed by only one person or by some of the people who control the place or by all of them.  However, standing alone, the fact that a particular conspirator had joint ownership or control over the place where the controlled substances were found is not sufficient to find that a conspirator possessed the controlled substances found there.

In order to find that a particular conspirator possessed a controlled substance and caused a joint ownership or control over the place where they were found, you must find beyond a reasonable doubt that the conspirator knew about the presence of the controlled substance and intended to exercise

control over them.

Now, the government must prove beyond a reasonable doubt that the conspiracy was in addition to distribute the narcotic drugs or to possess the narcotics with intent to distribute them. In order to prove the defendant guilty, the government must prove one of these circumstances beyond a reasonable doubt.

The word distribute means to deliver a controlled substance. Delivery is defined as the actual, constructive, or attempted transfer of a controlled substance. Simply stated, the words distribute and deliver mean to pass on or to hand over to another or to cause to be passed on or handed over to another or to try to pass on or hand over to another controlled substances.

For example, if A tells or orders B to hand over controlled substances to C, then he -- then A has caused the controlled substance to be handed over and, therefore, is distributed.

Distribution does not require a sale. Activities in furtherance of the ultimate sale, such as vouching for the quality of the controlled substances, negotiating for or receiving a price or supplying or delivering the controlled substance may constitute distribution. In short, distribution requires a concrete involvement in the transfer of the controlled substance.

As an alternative to proving that a conspiracy was to actually distribute drugs, the government may prove the alleged members possessed a controlled substance with intent to distribute that controlled substance.  The government must prove beyond a reasonable doubt that the conspirator had control over the controlled substances with the state of mind or purpose to transfer them to another purpose.

The same considerations that apply to your determination whether an alleged conspirator knew he possessed a controlled substance apply to your decision concerning the conspirator's intention to distribute them.  Since you cannot read a conspirator's mind you must make inferences from his behavior.  However, you may not convict the defendant unless there are inferences that convince you beyond a reasonable doubt that a conspirator intended to distribute the controlled substance.

When I say that you must find the conspirator intended to distribute the controlled substance, this does not mean that you must find the conspirator intended personally to distribute or deliver the controlled substance.  That is sufficient if you find the conspirator intended or caused or assists in distribution of the controlled substances.

Basically, what you are determining is whether the controlled substance in the conspirator's possession were for his personal use or for the purpose of distribution.  Often

it's possible to make this determination from the quantity of drugs found in the conspirator's possession. For example, it would be highly unlikely that a person with a large quantity of controlled substance possessed it for all for personal consumption.

Possession of a large amount of a controlled substance does not necessarily mean that the conspirator intended to distribute them. On the other hand, a conspirator may have intended to distribute a controlled substance even if he did not possess large amounts of them.

You should make your own decision whether a conspirator intended to distribute the controlled substance in his possession from all the evidence in the case.

As I've said, Count 1 charged the defendant with a conspiracy to distribute and possess with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine. The verdict form which you will be given would require you to specify in the event of guilty a verdict of Count 1 whether the conspiracy proven involved cocaine. You must unanimously agree on which controlled substance or substances were involved in the conspiracy.

You must also determine the weight of the controlled substance involved in the conspiracy. Specifically, you should determine that the conspiracy charged in Count 1 involved a mixture or substance containing cocaine. You must determine

whether the weight of that mixture or substance was 5 kilograms or more or if it was 500 grams or more or if it was less than 500 grams.

The defendant is accountable for the entire quantity of drugs that he personally distributed or possessed with intent to distribute, plus any amount of drugs that were distributed or possessed by other conspirators in furtherance of the conspiracy by which the defendant knew or reasonably should have known.

A defendant is not responsible for acts of others going beyond the scope of a conspiracy. However, a defendant is responsible for any amount of drugs that he knew or reasonably should have known about.

If you find the defendant could have reasonably foreseen certain quantities of drugs that were possessed or distributed by other members of the conspiracy, then you should add that amount to the amount of drugs that you find the defendant personally distributed or possessed with intent to distribute. However, you should not include any amount that you believe was for the defendant's own personal use and not intended for distribution.

Keep in mind that in making the findings as to the weight of Count 1, it is the entire weight of the mixture or substance that controls. If you find the mixture or substance you consider in your deliberations in Count 1 contained some

amount of cocaine, the fact that the mixture or substance was
less than 100 percent pure, was adulterated or contained cut,
is not relevant to your verdict as to the weight that should
not be considered by you -- and should not be considered by
you.

However, all -- as with all the other findings, your
determination as to the type and quantity of drugs involved in
the conspiracy must be based upon a unanimous finding beyond a
reasonable doubt.

Okay. We're going to take a 15-minute break, and
then we'll continue and go to Count 2.

During the break, please do not discuss the case with
anyone.

The Court will take a 10-minute recess.

(A recess was taken at 10:07 a.m.)


(Jury present in the courtroom at 10:22 a.m.)

THE COURT: All right. Ladies and gentlemen, Count 2
of the indictment charges the defendant with possession of
cocaine with intent to distribute -- distribute it.

Count 2 charges that on or about November 16th, 2011,
in the Western District of New York, the defendant Harold
Howard did knowingly, intentionally, and unlawfully possess
with intent to distribute 500 grams or more of a mixture and
substance containing cocaine, a Schedule II controlled

substance, all in violation of Title 21 United States Code

Sections 841(a)(1), 841(b)(1)(B).

Under Count 2 of the indictment, the defendant is

charged with violating the Drug Abuse Prevention and Control

Act.  That law makes it a crime for any person knowingly or

intentionally to possess with intent to distribute a controlled

substance, Title 21 United States Code Section 841(a)(1) and

841(b)(1)(B).

In order to prove the charge in Count 2 against the

defendant, the government must establish beyond a reasonable

doubt each of the followings three elements of the crime:

First, that the defendant possessed narcotic drugs; two, that

he knew that he possessed narcotic drugs; and, three, that he

possessed narcotic drugs with intent to distribute them.

Under Count 2 of the indictment, the government must

prove that material that the defendant is charged with

possessing with intent to distribute was, in fact, cocaine.

The government may prove this through either direct or through

circumstantial evidence.

As I said earlier, an example of direct evidence is

testimony of a chemist who has done a chemical analysis of the

material or materials.  Circumstantial evidence would be

evidence from which you can infer that the material or

materials were cocaine, such as testimony concerning the name

used by the defendant or others to refer to the material or

materials or testimony about the materials' appearance.

Whether the government relies on direct or circumstantial evidence to prove the material at issue was cocaine, you must do so beyond a reasonable doubt.

The definitions of certain terms that I've already given to you in connection with the alleged narcotic conspiracy in Count 1 of the indictment also apply in connection with the charge of possession with intent to distribute it -- narcotics in Count 2 of the indictment.

Specifically, the definitions of controlled substances, of possession, and the term intent to distribute that have all been given to you in connection with the alleged narcotic conspiracy in Count 1 also apply in the context of this intent to distribute count, and, therefore, I will not repeat them.

The second element the government must prove beyond a reasonable doubt is the defendant knew that he possessed narcotics. To establish this element the government must prove the defendant knew that he possessed narcotics; that is, this possession was not due to carelessness, negligence, or mistake.

If you find the defendant did not know that he had narcotics in his possession or that he didn't know that what he possessed was, in fact, narcotics, then you must find the defendant not guilty.

Although the government must prove that the defendant

knew that he possessed narcotics, the government does not have
to prove that such defendant knew the exact nature of the drugs
in his possession, that it is enough that the government proves
the defendant knew that he possessed some kind of narcotics.

Your decision whether the defendant knew the
materials he possessed were drugs involves a decision about a
defendant's state of mind.  As I indicated earlier, it's
obviously impossible to prove directly the operation of a
defendant's mind.  Wise, intelligent consideration of all the
facts and circumstances shown by the evidence and the exhibits
in the case may enable you to infer what the defendant's state
of mind was.

In our everyday affairs we are continuously called
upon to decide the -- from the actions of others what their
state of mind is.  Experience has taught us that frequently
actions speak louder and more clearly than spoken or written
words.

Therefore, you may well rely, in part, on
circumstantial evidence in determining the defendant's state of
mind.  For example, if the defendant was the sole occupant of a
residence or a vehicle, it's reasonable to conclude that he
knew about the items in the residence or vehicle.

The defendant's behavior may also indicate knowledge.
Nervousness in the presence of the drugs or flight from the
site in which authorities identified drugs may indicate the

defendant knew that the materials in question were drugs.
Also, the possession of a large quantity of drugs may indicate
the defendant knew what he had in his possession.  These
examples are neither exhaustive nor inclusive.  It's up to you
based upon all the evidence to determine whether the defendant
knew that he possessed narcotic drugs.

The third element the government must prove beyond a
reasonable doubt is the defendant intended to distribute the
narcotics.  The word distributed means to deliver drugs.
Deliver is defined as actual or constructive or attempted
transfer of drugs.

Simply stated, the words distributed and deliver mean
to pass on or to have another -- or hand over to another or to
cause to be passed on or handed over to another or to try to
pass on or to hand over to another the drugs.  For example, if
A tells B to hand over the drugs to C, then he, A, has caused
the drugs to be handed over and therefore has distributed them.

Distribution does not require a sale.  Activities in
furtherance of the ultimate sale, such as vouching for the
quality of the drugs, negotiating for or receiving the price,
supplying or delivering the drugs may constitute distribution.
In short, distribution requires a concrete involvement in the
transfer of the drugs.

Now, if you find the government has proven beyond a
reasonable doubt the three elements that I just described to

you, then there is one more issue that you must decide.  I will
provide to you a special verdict form asking you about the type
and the amount of drugs the defendant is alleged to have
possessed with intent to distribute.  The burden is on the
government to establish the type and amount of drugs alleged in
Count 2 beyond a reasonable doubt.

Remember, you should address this issue and complete
this portion of the form only if you find the first three
elements to have been established.  If you do not find that the
government has proven all three elements, then do not complete
that portion of the form.

As I've said, Count 2 charges the defendant with
possession with intent to distribute 500 grams or more of a
mixture and substance containing cocaine on November 16th,
2011.  The verdict form, which will be given to you, will
require you to specify in the event of a guilty verdict for
Count 2 whether the possession that was proved involved
cocaine.  You must unanimously agree on which controlled
substance was involved in the conspiracy.

You must also determine the weight of the controlled
substance involved in the conspiracy.  Specifically, you should
determine that the possession with intent to distribute charge
in Count 2 involved a mixture or substance containing cocaine.
You must determine whether the weight for that mixture or
substance was 500 grams or more or was it less than 500 grams.

Keep in mind that in making the findings as to the weight in Count 2, it is the entire weight of the mixture or substance that controls.

If you find the mixture or substance you consider in your deliberations accounted to -- contained some amount of cocaine, the fact that a mixture or substance was less than 100 percent pure or was adulterated or contained cut is not relevant to your verdict as to the weight and it should not be considered by you. However, you should not include any amount that you believe was for the defendant's own personal use and not intended for distribution.

And as with all the other findings, your determination as to the type and quantity of drugs involved in Count 2 must be based upon a unanimous finding made beyond a reasonable doubt.

Count 3 of the indictment charged the defendant with possessing a firearm in furtherance of the drug trafficking crimes. The indictment reads as follows: That on or about November 16th, 2011, in the Western District of New York, the defendant Harold Howard in furtherance of the drug trafficking crimes for which he may be prosecuted in a court of the United States that is a violation of Title 21 United States Code Section 841(a)(1) and 846, as set forth in Counts 1 and 2 of this indictment, those allegations are incorporated herein by reference, did knowingly and unlawfully possess firearms,

including a machine gun, namely a Haskell Model JS-45,

semiautomatic automatic 45-caliber pistol bearing serial number

007819, a Rossi Model 38 special, 38-caliber revolver bearing

serial number 207746, and an SWD, Incorporated M-11/9 fully

automatic machine gun bearing serial number 87-0003317, all in

violation of United States Code Section 924(c)(1) and

924(c)(1)(B)(1)(2).

The relevant statute for Count 2 is in Title 18

United States Code Section 924.  It provides in pertinent part

that any person who in furtherance of any drug trafficking

crime for which he may be prosecuted in a court of the United

States possesses a firearm shall be guilty of a crime.

Under Count 3 the defendant is charged with

possession of a firearm during the commission of a drug

trafficking crime which are charged in Counts 1 and Counts 2.

If upon all the evidence you find the government has failed to

prove Count 1 and Count 2 beyond a reasonable doubt, then you

will proceed no further.  Count 3 is to be considered only if

you find the defendant guilty under Counts 1 and 2 as charged.

In reaching your verdict on Count 3, you may consider

the evidence in Count 1 and 2 only for the purpose of

determining whether the elements of the crime of Count 3 have

been satisfied.

The government must prove beyond a reasonable

doubt -- to sustain its burden of proof to find the defendant

guilty, first, these are the elements; that the defendant committed a drug trafficking crime to which he may be prosecuted in a court of the United States; second, the defendant knowingly possessed a firearm in furtherance of the crime, the crime charged in Count 1 and/or Count 2.

The first element the government must prove beyond a reasonable doubt is the defendant committed a drug trafficking crime for which he might be prosecuted in a court of the United States. The indictment is charged -- strike that.

The defendant is charged in Count 1 of the indictment with conspiracy to possess with intent to distribute and to distribute narcotics. He is charged in Count 2 with possession with intent to distribute narcotics. I instruct you that a conspiracy to possess with intent to distribute and to distribute narcotics and possession with intent to distribute narcotics are drug trafficking crimes. However, it is for you to determine that the government has proven beyond a reasonable doubt that the defendant committed one of these crimes as charged.

The second element the government must prove beyond a reasonable doubt is the defendant knowingly possessed a firearm in furtherance of the commission of the crime charged in Count 1 and 2. To prove that the defendant knowingly possessed a firearm in furtherance of the crime, the government must prove that the defendant had possession of a firearm and that

1    such possession was in furtherance of the crime.

2            Possession means that the defendant either had

3    physical possession of the firearm on his person or whether he

4    had dominion and control over the place where the firearm was

5    located and had the power and the intention to exercise control

6    over the firearm.

7            To possess a firearm in furtherance of a crime means

8    that the firearm helped forward, advance, or promote the

9    commission of the crime.  The mere possession of the firearm at

10   the scene of the crime is not sufficient under this definition.

11   The firearm must have played some part in furthering the crime

12   in order for this element to be satisfied.

13           To satisfy this element, you must also find the

14   defendant charged or used the firearm knowingly.  This means

15   that he carried the firearm purposely and voluntarily and not

16   by accident or mistake.  It means that he knew the weapon was a

17   firearm as we commonly use the term.  However, the government

18   is not required to prove the defendant knew that he was

19   breaking the law.

20           In addition, you must also determine whether one of

21   the firearms possessed in furtherance of the drug trafficking

22   crime was a machine gun.  The term machine gun is defined in

23   the statute as any person -- any weapon which shoots, is

24   designed to shoot, or can be readily restored to shoot

25   automatically more than one shot without manually reloading by

a single function of the trigger.  A trigger is any mechanism
used to initiate the firing sequence.

The term machine gun also includes the frame or
receiver of any such weapon, any part designed and intended
solely and exclusively, or a combination of the parts designed
and intended for the use in converting a weapon into a machine
gun, and any combination of the parts from which a machine gun
can be assembled if such parts are in possession or under the
control of a person.

The verdict form which you will be given requires you
to specify in the events of a guilty verdict on Count -- on
Count 3 whether the defendant possessed a machine gun in
furtherance of a drug trafficking crime as he is charged in
Counts 1 or Count 2 of the indictment.  Your determination as
to whether the defendant possessed a machine gun in furtherance
of drug trafficking must be based upon a unanimous finding made
beyond a reasonable doubt.

Count 4 of the indictment charges the defendant with
being a person convicted of a felony who possessed a firearm or
ammunition shipped in interstate or foreign commerce.

The indictment reads as follows:  That on or about
November 16th, 2011, in the Western District of New York, the
defendant Harold Howard, having been convicted on or about
December 18th, 1998, in county court, Erie County, New York, of
a crime punishable by imprisonment for a term exceeding one

year unlawfully did knowingly possess in and affecting commerce firearms; namely, a Haskell Model JS-45, semiautomatic 45-caliber pistol bearing serial number 007819, a Rossi Model 38 special 38-caliber revolver bearing number 207746, and an SWD, Incorporated M-11/9 fully automatic machine gun bearing serial number 87-0003317, and ammunition, namely 153 rounds of assorted ammunition, all in violation of Title 18, United States Code Sections 922(g)(1) and 924(a)(2).

The relevant statute on this subject is Title 18 United States Code Section 922(g) which provides that it should be unlawful for any person who has been convicted in any court of any crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Congress was of the view that the ease with which persons, including criminals, were able to acquire firearms and ammunition was a significant factor in the prevalence of violent crime in the United States and that federal control over gun dealers and restrictions of distribution of firearms would be helpful to state and local authorities in beating this problem. Accordingly, they passed a series of laws designed by giving support to federal, state, and local law enforcement officials in combatting crime of violence.

In your role as jurors, you are not to be concerned

with the wisdom or the policy of those laws if, in fact, the violation has occurred. The law should be enforced in general. These laws and provisions prohibited certain categories of people from possessing or receiving firearms which were shipped in interstate or foreign commerce and required any person in the business of dealing firearms to be licensed.

The parties agree and stipulate that the defendant had been previously convicted of a crime punishable by a term of imprisonment exceeding one year.

The government must also prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty.

First, the defendant was convicted in any court of a crime punishable by imprisonment for a term exceeding one year as charged; second, that he knowingly possessed a firearm or ammunition as charged; third, that the possession was or in affecting interstate commerce.

The first element the government must prove beyond a reasonable doubt before you convict is that before the date the defendant is charged with possessing any and all firearms or ammunition in question, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The parties have stipulated the defendant was convicted of a crime in New York state court and the crime was punishable by imprisonment for a term exceeding one year.

1    It is not necessary that the government -- that the
2   defendant knew the crime was punishable by imprisonment for
3   more than one year, nor is it necessary for the defendant to
4   have been sentenced to imprisonment for more than one year.

5    I instruct you in this connection that the prior
6   conviction that is the element of the crime charged here is not
7   disputed.  It is only to be considered by you for the fact that
8   it exists and nothing else.  You are not to consider it for any
9   purpose.  You are not to speculate as to what law it was for.
10  You may not consider the prior conviction in deciding whether
11  it is more likely than not that the defendant was in knowing
12  possession of any of the drugs that are charged which is a
13  disputed element of the defense.

14    The second element the government must prove beyond a
15  reasonable doubt is that on or about the date set forth in the
16  indictment, the defendant knowingly possessed a firearm or
17  ammunition.  The term firearm means any weapon which will or is
18  designed to or may be readily converted to expel a projectile
19  by the action of am explosion.

20    Possession includes both actual and constructive
21  possession.  A person who has direct physical control of
22  something on or around his person is not in actual possession
23  of it.  The person who is not in actual possession but who has
24  both the power and intention to exercise control over something
25  is in constructive possession of it.  Whenever I use the term

possession in these instructions, I mean actual as well as constructive.

If you find the defendant either had actual possession of a firearm or that he had power or intention to exercise control over a firearm, even though they were not in his physical possession, you may find that the government has proven possession.

The law also recognizes that possession may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over a firearm. This is called joint possession if you find the defendant had such power and intention, that he possessed a firearm under this element, even if he possessed it jointly with another. Proof of ownership of a firearm is not required.

To satisfy this element, you must also find the defendant knowingly possessed the firearm or ammunition. This means that he possessed the firearm or ammunition purposefully and voluntarily and not by accident or mistake.

It also means that he knew that the weapon was a firearm as we commonly use the term. However, the government is not required to prove the defendant knew that he was breaking the law.

The third element the government must prove beyond a reasonable doubt is that the firearm or ammunition the

defendant is charged with possessing was in or affecting

interstate or foreign commerce.  This means the government must

prove that at some time prior to the defendant's possession of

a firearm or ammunition it had traveled in interstate or

foreign commerce.

It is sufficient for the government to satisfy this

element by proving that at any time prior to the date charged

in the indictment the firearm or ammunition crossed a state

line or the United States border.  It's not necessary for the

government to prove that the defendant himself carried a

firearm or ammunition across or how they were transported.  It

is not necessary for the government to prove the defendant knew

that the firearm or ammunition had previously traveled in

interstate or foreign commerce.

In that regard, the evidence the firearms or

ammunition in question were manufactured in a different state

or a country than that the defendant is charged with

possessing, you are permitted to infer from the fact that the

firearm or ammunition traveled in interstate or foreign

commerce.  However, you are not required to do so.

Now, the final count, Count 5, is that he's charged

with possession of an unregistered firearm.  The indictment

reads that on or about November 16th, 2011, in the Western

District of New York, the defendant Harold Howard, did

knowingly possess a firearm; namely, an SWD, Incorporated

1   M-11/9 fully automatic machine gun bearing serial number

2   87-0003317, a machine gun as described in Title 26 United

3   States Code Section 5845(a)(6) six and 5845(b) not registered

4   to the defendant Harold Howard in the National Firearm

5   Registration and Transfer Record, all in violation of Title 26

6   United States Code Section 5841, 5845(a)(6), 5845(b), and

7   5861(d), and 5871.

8           The relevant statute on this subject is called the

9   National Firearms Act, which provides that it should be

10  unlawful for any person to receive or possess a firearm which

11  is not registered in the National Firearm Registration and

12  Transfer Record.

13          The National Firearm Act provides for the federal

14  taxation of certain classes of firearms and further provides

15  for a central registry of all such firearms in the United

16  States which are not under the control of the government.

17          This central registry is called the National Firearms

18  Registration and Transfer Record.  The information is

19  usually -- includes identification of each firearm, usually by

20  the serial number, the date of its registration, the name and

21  address of the person who is entitled to possess the firearm.

22          It is required that each maker or importer of

23  firearms shall register in the National Firearm Registration

24  and Transfer Record each firearm he makes or imports.  It's

25  also required that whenever a firearm is transferred, the

person who transferred it must register the firearm in the registry to the person to whom it was being transferred.

In order to accomplish this, the transferer must file with the United States Treasury Department -- or Bureau of Alcohol, Tobacco & Firearms an application for the transfer or registration of the firearm to transferee.  The application includes, among other things, the fingerprints and the photograph of the transferee.  If the transfer is authorized in writing by the Bureau of Alcohol, Tobacco & Firearms & Explosives, that authorization affects the registration of the firearm to the transferee.

A transfer tax which is assessed by the National Firearms Act upon each transfer of a firearm is paid by the transferer when he purchases the approximate tax stamp from the United States Treasury Department and affixes the stamp to the approved transfer application form.

The government must prove each of the following elements beyond a reasonable doubt:  On or about the date alleged in the indictment, the defendant possessed a firearm; namely, a machine gun; two, that the defendant had knowledge that what he possessed was a firearm; three, that the firearm was not registered to the defendant in the National Firearms.

The first element which the government must prove beyond a reasonable doubt is the defendant did, in fact, have possession of a firearm in question under Section 5861(d).

The term firearm has a very specific meaning.  In this case the government must prove that where object defendant possessed was a machine gun.  The term machine gun means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manually reloading by a single function of the trigger.

The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or a combination of the parts designed and intended for use in converting a weapon into a machine gun, or any combination of parts of which a machine gun can be assembled if such parts are in possession or under the control of a person.

To possess means to have something within your control.  This does not mean that you must hold it physically, that is, have actual possession of it, but as long as the firearm is within your control, you possess it.  If you find the defendant had actual possession or that he had power and intention to control the firearm, even though it may not been physical possession of another, then you may find that the government has proven possession.

The law recognizes that the defendant may be sole or joint -- possession may be sole or joint if the defendant allowed --strike that.

If the defendant alone possessed the firearm, that is

sole possession.  If the defendant jointly with others possessed a firearm, that is joint possession.  Proof of ownership is not required.

Nor is the government required to prove that at the time of the receipt, possession, or transfer the defendant knew that he was breaking the law.  It is sufficient to satisfy this element if you find the defendant possessed the firearm voluntarily and not by accident or mistake.

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly possessed a firearm.  A person is knowing -- is knowingly in possession if his possession occurs voluntarily and intentionally and not caused by mistake or accident.  The defendant cannot be convicted of possession of a firearm if he did not intend to possess it.

In addition, the government must prove that the defendant knew that the evidence -- that the device he possessed had all the characteristics from which to be subject to regulation as a firearm as I've just defined it for you.

The third element the government must prove beyond a reasonable doubt is the firearm in question was not registered to the defendant in the National Firearms Registration and Transfer Record.

The evidence in this case contains a certificate showing that after diligent search of the National Firearm

Registration and Transfer Record, no record was found that the firearm which the government claims was involved in the case was registered to the defendant.

By such evidence you may but not need to find the government has sustained its burden of proving beyond a reasonable doubt the non-registration of a firearm.  The government does not have to prove that the defendant knew that the law required him to register the firearm or that it was not registered.

Now, while we are on the subject of elements, I should draw your attention to the fact that it does not matter if the indictment charges that a specific act occurred on or about a certain date and the evidence indicates that, in fact, it was another date.  The law only requires a substantial similarity between the dates alleged in the indictment and the dates established by the testimony or identified in the exhibits.

I should also draw your attention to the fact that the indictment charges that a certain amount was involved and the testimony and exhibits indicate that, in fact, a different amount was involved, it is for you to determine whether the difference is material.  And if you find that it was material, then you must find the defendant not guilty.  The law only requires a substantial similarity between the indictment and the proof that it is sufficient.

1     Now, ladies and gentlemen, you are about to be asked

2 to decide whether or not the government has proven beyond a

3 reasonable doubt the guilt of the defendant.  You are not being

4 asked whether any other person has been proven guilty.  Your

5 verdict should be based solely upon the evidence or lack of

6 evidence as to this defendant in accordance with these

7 instructions and without regard to whether the guilt of other

8 persons has or has not been proven.

9     Also, the question of possible punishment of the

10 defendant is of no concern for the jury and should not in any

11 sense enter into or influence your deliberations.  The duty of

12 imposing sentence rests exclusively upon the Court.

13     Your function is to weigh the evidence in this case

14 and determine whether or not the defendant is guilty beyond a

15 reasonable doubt solely on the basis of such evidence.  Under

16 your oath as jurors you cannot allow consideration of the

17 punishment which may be imposed upon the defendant if he's

18 convicted to influence your verdict or in any way or in any

19 sense enter into your deliberations.

20     Now, when you get to the jury deliberation room,

21 before you begin your deliberations you should elect someone to

22 be your foreperson.  The foreperson will be responsible for

23 signing all communications with the Court and for handing them

24 to the marshal during your deliberations.

25     You're about to go to the jury room and begin your

deliberations.  I will be sending all the exhibits to you in the jury room for your consideration.  I will keep the weapons and the cocaine in the courtroom.  If you want to see it, we'll bring you back in here.  If you want to handle anything, we can do it right in the courtroom.  I just think it's not a good idea to have those weapons and the cocaine floating around this building.

If you want any testimony of a witness read back, it can be done, but, remember, it's not always easy to locate what you may want so you have you to be as specific as possible in requesting portions of the testimony which you may want.  Your requests for testimony -- in fact, any communication with the Court shall be made to me in writing, signed by the foreperson, and given to one of the marshals who will then give it to me.

I will respond to the question or request you have as promptly as possible either in writing or I'll have you return to courtroom so I can speak with you in person.

In any event, you cannot tell me anything about how the jury stands on the issue of the defendant's guilt until after a unanimous verdict is reached and you are asked to return to the courtroom for your verdict.

During your deliberations you must not communicate with anyone by any means whatsoever.  We talked about that earlier in the trial.  And I'm talking about Blackberries, iPhones, internets, any of that stuff.  You simply are not to

receive any information about anything in this case except the evidence that was here.

I will also be sending a copy of the indictment to the jury room to have your deliberations you may use to read it so you know the crimes the defendant had been charged with. You're reminded, however, that an indictment is merely an acquisition. It is not to be used by you as any proof of the conduct charged.

I'll also be sending a copy of these instructions of law in order to assist you in your deliberations. You are to apply these instructions to the facts as you determine them. I remind you, however, that you are not to use -- I remind you, however, that you are to use these instructions as a whole and not single out any instruction alone as stating the law.

A verdict form will also be prepared for your convenience. The marshal will take the form in the jury room. When you have reached a unanimous verdict, an agreement as to your verdict, have the foreperson fill in the date and sign it and state the verdict upon which you unanimously agree, and you should then inform the Court by a note that you have received -- that you have received -- reached a verdict.

Now, this is the verdict form. The verdict form is basically United States of America versus Harold Howard jury verdict. Verdict of the jury. Having been instructed on the law applicable in this case, you are now required to make a

unanimous finding of guilty or not guilty as to each count of
the indictment.  Your answers to all the questions on this form
must be unanimous and must be based upon the findings beyond --
made beyond a reasonable doubt.  A copy of the indictment has
been provided to you and marked as Court Exhibit 3.

"Count 1:  How do you find the defendant Harold
Howard on the charge that he conspired to possess with intent
to distribute and distribute a mixture and substance containing
cocaine?"  Guilty, not guilty.

"If you find the defendant guilty, proceed to the
next question," which is:  "We, the jury, find the amount of
mixture of substance containing cocaine was," and mark only
one, 500 kilograms or more, and there's a space for more,
500 -- that's 500 kilograms or more.  The next one is 500
kilograms -- 500 grams or more.  So the first one is kilograms,
5 kilograms, the second one is 500 grams or more, and the third
one is less than 500 grams, so it's one, two, or three if you
find the defendant guilty.  If you don't find him guilty, you
don't have to answer that.

"Count 2:  How do you find the defendant Harold
Howard on the charge to possess with intent to distribute a
mixture or substance containing cocaine?"  Guilty, not guilty.

If you find the defendant guilty, then you proceed to
the next question.  "We, the jury, find the amount of mixture
or substance containing cocaine was," and it says to mark one,

500 grams or more, less than 500 grams.  Okay.  So that's the same as the first one.  There's a different amount there.

"Count 3 charges the defendant with possession of a firearm in furtherance of a drug trafficking offense as was charged in Counts 1 and 2 of the indictment.  How do you find on Count 3 of the defendant?"  Guilty, not guilty.

If you find the defendant guilty, proceed to the next question.

"If you find the defendant possessed in furtherance of a drug trafficking offense as charged in Counts 1 and 2" -- Count 3 relates back to Counts 1 and 2 -- and Counts 1 and 2 was a machine gun.  Yes, no.

"Count 4 charges the defendant with being a felon in possession of a firearms -- firearm or ammunition.  How do you find on Count 4 the defendant Harold Howard?"  Guilty, not guilty.

"Count 5 charges the defendant Harold Howard with possession of an unregistered machine gun.  How do you find on Count 5 the defendant Harold Howard?"  Guilty, not guilty.

Then it says, "Have the jury foreperson sign and date the form below," and there's a signature spot.

Proceed to final instruction on page 7.  It says, "Here I certify this verdict to be true and accurate."  Signed by the foreperson and dated.

The last instruction is that, "Now that you have

1  completed the verdict form, place it in an envelope provided,"

2  you'll have an envelope, "seal the envelope." Keep the

3  envelope in your possession until you provide it to the judge

4  in open court. Inform the Court by a written note that you

5  have reached a verdict. Do not disclose the verdict to the

6  Court or anyone else until you are asked to do so by the Judge

7  in open court."

8      Okay. Finally, ladies and gentlemen, the government

9  to prevail, as I said many times here, must prove the essential

10  elements by the required degree of proof. As I've already

11  explained, if it succeeds, your verdict should be guilty. If

12  it fails, not guilty. To report a verdict, it must be

13  unanimous.

14      Your function is to weigh the evidence in the case

15  and determine whether or not the defendant is guilty solely on

16  the basis of such evidence. Each juror is entitled to his or

17  her opinion. Each should, however, exchange views with his or

18  her fellow jurors. That is the very purpose of jury

19  deliberation, to discuss and consider the evidence, to listen

20  to the arguments of fellow jurors, to present your individual

21  views, to consult one another, and to reach an agreement based

22  solely and wholly on the evidence if you can do so without

23  violence to your individual judgement.

24      Each of you must decide the case for yourselves after

25  consideration with your fellow jurors based on the evidence in

1   the case, but you should not hesitate to change an opinion

2   which after discussion with your fellow jurors appears

3   erroneous.  However, if after carefully considering all the

4   evidence and the arguments of your fellow jurors, you entertain

5   a view that differs from the others, simply because you are

6   outnumbered.  Your final vote must reflect your conviction as

7   to how the issues should be decided.

8           All right.  Ladies and gentlemen, could you just step

9   in the jury room just for one moment, please.

10          (Jury not present in the courtroom at 11:02 a.m.)

11          THE COURT:  All right.  Anything further?

12          MS. MARANGOLA:  Your Honor, when I read the

13  verdict -- when you read the verdict form, I believe after the

14  conspiracy count, there were three sections.  I think it said

15  500 kilograms.  I don't know.  I think that --

16          THE COURT:  I said that.  I've got it -- I got it

17  right.  I said it -- I may have misstated it once, but then I

18  got it right.  It's -- there was a difference, one's kilograms,

19  one's grams.

20          MS. MARANGOLA:  And it should say five -- 5

21  kilograms.  Is that what the verdict said?  It might be a typo

22  that it says 500, because it should say 5 -- 5 kilograms, then

23  500 grams.

24          THE COURT:  It says 5 kilograms or more.

25          MS. MARANGOLA:  Perfect.  I might have misunderstood

 1  you.  I thought you said 500 kilograms.

 2           THE COURT:  I'll tell you what, just to make sure

 3  it's clear, I will go through the counts again.

 4           MS. MARANGOLA:  That you.

 5           MR. PENDERGRASS:  Your Honor, the only problem we

 6  have is when we're discussing the charge, I think that the --

 7  that a third element within the conspiracy charge was supposed

 8  to exist, and that was -- the third element was supposed to be

 9  that -- describing the 5 kilograms as a third element.

10           THE COURT:  Well, it's actually the Sand.  It's two

11  elements, but then it goes into a lot of explanation which

12  really is the Sand charge -- let me tell you, we spent a lot of

13  time on that charge.  And it's a very complicated charge,

14  there's no question about it.  I think it took me 20 minutes or

15  more to read all the elements and what has to be charged.

16           I think I clearly, as best I could, went through the

17  entire elements of the charge that may have been -- there's two

18  elements, but there's a lot incorporated in those two elements

19  which could be a third element, I suppose, but it's

20  incorporated herein in the charge itself.

21           So I know what you're saying, but I did include in

22  the charge anything that would have been a third element,

23  possession with intent to distribute, which went through all

24  the definition of possession, distributed, what it means, and I

25  think I did it as well as I possibly could.

 1          All right.  I'm going to go back to the counts again.

 2    Bring the jury back, please.

 3          MR. PENDERGRASS:  Your Honor, if you will, just --

 4    and one of the concerns that we had with it was because on the

 5    special verdict sheet, it required the jury to determine

 6    whether or not it was five -- whether or not it was 5

 7    kilograms, 500 grams or --

 8          THE COURT:  Right.

 9          MR. PENDERGRASS:  So one of the concerns that we were

10    having was that the number of elements match with what the

11    special verdict sheet --

12          THE COURT:  Right.  I think it's clear enough.

13          MR. PENDERGRASS:  Okay.

14          THE COURT:  Your objection is noted, sir.

15          MR. PENDERGRASS:  Thank you.

16          THE COURT:  Bring the jury back.

17          (Jury present in the courtroom at 11:06 a.m.)

18          THE COURT:  Ladies and gentlemen, I just want to

19    repeat what I said earlier.  I may have been a little bit --

20    may have not read the verdict form accurately.  I think I did,

21    but I'm going to do it again.

22          As to Count 1, it's how -- I'm just going to

23    summarize.  How did you find the defendant on Count 1 of the

24    charge of conspiring to possess with intent to distribute and

25    distribute a mixture and substance containing cocaine?  Guilty,

1  not guilty.

2       And if it's found guilty, then you go to the next

3  question.  It says, "We, the jury, find the amount of the

4  mixture and substance containing cocaine was," and it says,

5  "Mark only one."  5 kilograms or more, 500 grams or more, less

6  than 500 grams.  Okay?  So there's one of the three you select

7  if you find him guilty.  5 kilograms or more, 500 grams or

8  more, or less than 500 grams.  Okay?

9       And then Count 2, "How do you find the defendant

10 Harold Howard on the charge to possess with intent to

11 distribute a mixture and substance containing cocaine?"  Guilty

12 or not guilty.

13      "If you find the defendant guilty, then proceed to

14 the next question."

15      Then it goes, "We, the jury, find the amount of

16 mixture and substance containing cocaine was," and you mark

17 only one.  Here it's 500 grams, less than 500 grams.  Okay?

18      So the first one has kilograms, the grams, and less

19 than gram -- 500 grams.  This one has the 500 grams.  It's

20 clear on the sheet.  Okay?

21      How do you pick a foreperson?  Majority vote.  You

22 can do it by secret ballot or paper, whatever way -- any way

23 you want to do it.  That's your choice how you pick it.

24      (Marshal sworn.)

25      THE COURT:  All right.  At this time, I'm going to

excuse our four alternates. Ms. Croudy, Mr. Youngs,
Ms. Granat, and I know I'm going to get this --
Mr. Vanschoonhoven. Okay. Please excuse my -- if I
mispronounced this.

Ladies and gentlemen, you are now excused. I want to
thank you very much for your time and effort and your
deliberation in this case. You were called upon. Sometimes we
have a trial, and it happens where, because of one reason or
another where one of the main jurors has to be excused, and it
happens, that you would then be used to replace that juror. It
didn't happen in this case.

But I hope you got some understanding of what trials
are like in the Federal District Court and that you -- the
experience will be helpful to you in, you know, making your
future decisions as to how the court process works. It's a
good system but does rely upon the effort and inconvenience, I
guess, of many of our citizens to participate.

You'll never have to discuss the case with anyone at
all. It's up to you if you want to talk about the case. But
you're free to go, and thank you very much. We'll let you --
we'll let you know in about two years as far as any future jury
service is concerned. Have a nice day. Thank you very much.

(Alternate jurors excused.)

THE COURT: All right. Thank you, ladies and
gentlemen.

1          (Jury not present in the courtroom at 11:12 a.m.)

2          THE COURT:  All right.  We're making some minor,

3   minor, minor changes to the charge, which are like -- there's

4   about three pages on electronic monitoring and all that stuff,

5   and I've taken that all out, and I made some other changes

6   which just go to the pronoun.  I don't know how it got in

7   there.  But the defendant is a male, and I kept referring to

8   the notes as a she.  So we had to take -- that's why I stalled

9   a couple of times.

10          So, Denise, the last part the charge -- starting on

11  page -- whatever it is.  It's somewhere around -- well, it's

12  the last two or three pages that talks about electronic, that

13  all comes out.  Okay?

14          You have an office in the building somewhere, I

15  think.  I don't know where it is.

16          MR. BURGASSER:  Third floor, Your Honor.

17          THE COURT:  I've never been there, nor do I care to

18  go there.

19          And your office is where?

20          MR. PENDERGRASS:  I have a home office now, Your

21  Honor.

22          THE COURT:  Well, stick around downtown.  Do we have

23  your cell phone?  It's downstairs?

24          MR. PENDERGRASS:  Yes, I will.

25          THE COURT:  You can go away, but please be within ten

1  minutes of being notified.

2       The jury will receive its lunch around 12.  So stick

3  around to 12, and then you can have lunch.  It's usually about

4  30 minutes or so.  So be available after 12:30.  Okay?

5       THE CLERK:  Counsel, paper exhibits, were there any

6  paper exhibits?

7       MS. MARANGOLA:  Yes, there are.

8       THE CLERK:  I'll need these.

9       (Recess taken.)

10

11       THE COURT:  We have received two questions from the

12  jury.  Juror Number 3 is the -- Andrijczuk, is that how you say

13  that -- is the foreperson.

14       And the first one was, "In regards to Count 1, does

15  the requirement of five kilos include the drugs in evidence or

16  those possessed and distributed over the course of the

17  conspiracy?"

18       And what is your proposal?

19       MS. MARANGOLA:  Your Honor, the government's proposal

20  is that the Court either read back that portion of the

21  conspiracy jury instruction or simply instruct the jurors.

22       THE COURT:  Which is what, on page -- do I have

23  the -- where's the instructions, Denise?

24       MS. MARANGOLA:  We don't have hard copies of your

25  jury instructions so I don't know what the page exactly is, or

1    simply to instruct the jury a summary of the law which is there

2    to consider the total amount during the conspiracy.

3              THE COURT:  Well, let me -- let me get the charge.  I

4    just read it.  I thought it was out here.

5              MR. PENDERGRASS:  Judge, just so that we're on the

6    same page, Your Honor said during the course of the conspiracy,

7    and I'm looking at the note, and it says during the course of

8    the investigation.

9              THE COURT:  What's the difference?

10             MR. PENDERGRASS:  Well, the investigation was from

11   March 10th -- March of 2010, to the November 16th, 2011.  The

12   conspiracy, the course of the conspiracy was --

13             THE COURT:  2008.

14             MR. PENDERGRASS:  -- 2008 to November 16th, 2011.

15             THE COURT:  The question is confusing because the --

16   the investigation started in -- in 2009; is that correct?

17             MR. PENDERGRASS:  March of 2010, Your Honor.

18             THE COURT:  March --

19             MS. MARANGOLA:  That's when the sheriffs became

20   involved.

21             THE COURT:  But the conspiracy goes back to 2008?

22             MS. MARANGOLA:  Right.  And with respect to -- it

23   references Count 1.  I think the appropriate charge would be

24   what could be considered in Count 1, which would be the --

25             THE COURT:  Where's the indictment, Denise?

1          Do we need to be unanimous on -- this is the recent

2     note.  That would be the third one.  Do we need to be -- as it

3     relates to Count 3, as it relates to -- do we have to be

4     unanimous -- is that on all the guns?

5          MS. MARANGOLA:  Yes.

6          THE COURT:  No.  It has to be unanimous as to any one

7     of the guns.

8          MS. MARANGOLA:  Correct.

9          THE COURT:  Any one of the guns?

10          MS. MARANGOLA:  Yes, Your Honor.

11          THE COURT:  Then we ought to have a special verdict

12     form.  We ought to have it with guns.

13          MS. MARANGOLA:  The special verdict form references

14     only the machine gun, so it could be --

15          THE COURT:  So it says all the guns in Count 3.  The

16     machine gun is Count 4.

17          MR. PENDERGRASS:  Yeah.

18          MS. MARANGOLA:  No, machine gun is Count 3.  Count 3

19     is possession of firearms in furtherance of drug trafficking

20     with respect to the three guns in his car.  They can just find

21     guilty on one of those guns.  But for the enhanced sentence,

22     there's the extra question on the verdict form, did you find

23     that one of the guns was a machine gun?

24          MR. PENDERGRASS:  Well, Your Honor, I don't think

25     that they can find --

1          THE COURT:  Where is the verdict sheet?

2          Count 3, special verdict sheet just says machine gun.

3          MS. MARANGOLA:  Right.  Count 3 references all of

4     the -- all of the firearms though, and then the extra question

5     is do you find that one of the firearms was a machine gun.  So

6     maybe one of the jurors finds that one of the other guns in the

7     car was possessed in furtherance of drug trafficking but not

8     the machine gun.  That's the only way I can think that they

9     would even ask that question.

10          THE COURT:  Did knowingly and unlawfully possess

11     firearms, including the machine gun.  The way this is written

12     is so confusing.  I didn't understand it before the trial, and

13     it's very awkward, very difficult to understand.

14          It talks about a machine gun, then it talks about a

15     semiautomatic weapon, then it talks about a 38, then it goes

16     back to a machine gun.  Whoever drafted this, one of the law

17     clerks thought there was five guns.  I said there's only three.

18     Now there's four.

19          MS. MARANGOLA:  No, there's five guns that are on --

20     that are charged in the conspiracy.  That's the evidence that's

21     present in the trial.  But for that specific count, I'm just

22     alleging the firearms found in the back of his 2008 Hummer, and

23     those are the three firearms that were found in the back of his

24     Hummer.

25          THE COURT:  I'm going to answer the two, and then

1    we'll work on the third one.

2              MS. MARANGOLA:  Yes, Your Honor.

3              THE COURT:  All right.  Bring the jury in, please.

4              MS. MARANGOLA:  Your Honor, with respect to note two,

5    I do have the exhibit lists.  I do have the exhibits that

6    reference the amount of the drugs.

7              THE COURT:  Say that again.

8              MS. MARANGOLA:  We didn't address note number two

9    prior to the jury coming in which --

10             THE COURT:  Well, I'm going ask them what they're

11   talking about.  I don't understand the question.

12             MS. MARANGOLA:  Okay.

13             THE COURT:  Let's bring the jury in.

14             (Jury present in the courtroom at 1:42 p.m.)

15             THE COURT:  Ladies and gentlemen, I have received

16   three notes from you.  They'll be marked -- the first one will

17   be relating to the note that in regards to Count 1, does the

18   requirements of 5 kilograms include the drugs, cocaine in

19   evidence or those possessed and distributed over the course of

20   the investigation.  That will be Court Exhibit 4.

21             THE CLERK:  That's Court Exhibit 5, Judge.

22             THE COURT:  5.  The next one deals with could the

23   Court gives us a complete total of all the cocaine in evidence.

24   That will be 6.

25             And then the last one just received was as to

Count 3, do we need to be unanimous on all the guns possessed
by Mr. Howard.  Okay.

        We're going to need some clarification here, ladies
and gentlemen.

        As to Court Exhibit 5, Mr. Andrijczuk, you're the
foreperson?

        THE FOREPERSON:  Yes.

        THE COURT:  The question is in regard to Count 1,
okay, now, we're talking about Count 1, does the requirement of
5 kilograms include the drugs, cocaine, in the evidence or
those possessed and distributed over the course of the
investigation?

        Well, Count 1 relates to the conspiracy starting in
2008, so the conspiracy count goes back to 2008 as it relates
to Count 1.

        Now, the investigation, the evidence was in 2010.
But if you're talking about Count 1, Count 1 goes back to the
date in which the conspiracy started.  So I'm not sure -- when
you use the word investigation, I'm not sure I know how to
answer that in light of what the Count 1 -- 1 says is the -- is
the beginning of the conspiracy.

        So think about that a little bit, because I'm not
sure exactly -- because Count 1 relates to the entire
conspiracy from 2008 up until November 11, 2011.  The
investigation started later.  So I need -- and it seems to --

1    it's kind of hard to answer that question in the way it's been

2    presented.  I can't give you a straight answer on that until I

3    have some better understanding of what you're referring to.

4         Remember, Count 1 goes back to the conspiracy date in

5    2008 up until November 11th, 2011.  Okay?  That's Count 1.

6    Okay.  So think about that.  And if you need any further

7    clarification, let me know what it is, and I'll try to answer

8    it.

9         As far as the Court Exhibit 6, "Could the Court give

10    us a complete total of all cocaine in evidence?"  Well, are you

11    talking about the amount of cocaine that was in the courtroom

12    physically or the amount of cocaine that was testified to

13    during the course of the conspiracy, which is from November

14    2008 to November 2011?  So I don't know whether you're talking

15    about the actual drugs that were here or the evidence that you

16    heard.  There's a difference.

17         A JUROR:  The evidence that was here.

18         THE COURT:  So you think about it and come back and

19    give me another note.  I want to make sure I understand it.

20         As far as the third question, I'm going to need

21    another few minutes to work on that.  So in the meantime, try

22    to help me out on the first two questions, and then we'll go to

23    the third one as soon as I'm ready for it.  Okay?  Thank you.

24         (Jury not present in the courtroom at 1:46 p.m.)

25         THE COURT:  Do you have a copy of the note, number

1  three?  Think about it, and we'll talk about it in a few

2  minutes.

3          (A recess was taken at 1:47 p.m.)

4          THE COURT:  All right.  Any comments on Court

5  Exhibit 7?

6          MS. MARANGOLA:  Yes, Judge.

7          MR. PENDERGRASS:  Yes, Your Honor.

8          THE COURT:  Go ahead.

9          MR. PENDERGRASS:  Your Honor, and I've had the

10  opportunity to reread note -- Court Exhibit Number 7, and it

11  said, "Do we need to be unanimous on all guns?"  Certainly,

12  based on the way that the indictment and the special verdict

13  sheet was drafted, we think that they need to be united -- or

14  unanimous in terms of deciding that he possessed firearms.

15          But more importantly, after careful read of the note,

16  it suggests to me that they are asking whether or not they need

17  to be unanimous on whether or not he possessed a single gun,

18  for instance, whether they can say he possessed that gun at

19  five agrees and seven disagrees, and vice versa, if seven

20  agrees on another gun and five disagrees on the other gun.

21          So I think that in order for -- the way that we

22  should answer this question is say you have to be unanimous

23  with the possession of the guns in this charge, but you have to

24  find that he possessed firearms.  Right?  And so that means

25  that they would have to be unanimous on two or more of the guns

1    or machine guns that is indicted in these charges.

2              THE COURT:  Well, you're saying it should be all the

3    guns?

4              MR. PENDERGRASS:  No, I'm not saying that.  I'm

5    saying that it should be guns.  It should be two or more.

6              THE COURT:  Well, I don't know where -- two or more?

7    Well, in the charge itself it says that the second element must

8    prove beyond a reasonable doubt the defendant only possessed a

9    firearm in the plural -- in the singular.  That's the charge.

10             MR. PENDERGRASS:  That's the charge.  That's not the

11   indictment or the special verdict sheet.

12             THE COURT:  Yeah, but a lot of times there's

13   interpretation.  What is your position?

14             MS. MARANGOLA:  Your Honor, the law is clear that the

15   jury only needs to find him guilty of possessing one firearm to

16   establish a Title 18 924(c) charge.  In fact, this issue has

17   come up recently with the trial I had before Judge Skretny, and

18   Mr. McCabe is actually going to provide the case law that was

19   used in that case.  He's going to provide it to

20   Mr. Gillmeister.

21             THE COURT:  Where is it?

22             MS. MARANGOLA:  He said he's e-mailing it to

23   Mr. Gillmeister.

24             THE COURT:  Well, he hasn't mailed it yet.

25             MS. MARANGOLA:  I contacted him in the last ten

1  minutes so he should be getting it and sending it over.

2      But nonetheless, this issue did come up with Judge

3  Skretny, and we provided case law which illustrates that

4  although multiple items may be charged in an indictment, for

5  example, firearms and ammunition as is charged in Count 4 as

6  well, you only need to find that the defendant possessed one of

7  those items.

8      MR. PENDERGRASS:  Well, that's firearms and

9  ammunition.  Their question goes specifically to the question

10  of firearms, and in the indictment it doesn't -- the

11  indictment, Your Honor, is the indictment they drafted.  And in

12  the indictment, they could have said a firearm or firearms.

13  Right?  And in the indictment that they drafted, they indicted

14  it as possession of firearms.

15      MS. MARANGOLA:  Your Honor --

16      MR. PENDERGRASS:  So that's got to be more than one,

17  Your Honor, because they indicted him in possession of

18  firearms, not one.

19      THE COURT:  But the instruction that I gave said

20  firearm.

21      MR. PENDERGRASS:  Your Honor --

22      MS. MARANGOLA:  And we all agreed to that.

23      THE COURT:  Which is controlling.  The special

24  instructions on the law is controlling.

25      MR. PENDERGRASS:  Well, the indictment is

1    controlling.

2            THE COURT:  Where is this case?

3            MS. MARANGOLA:  Mr. McCabe should be e-mailing it to

4    Mr. Gillmeister.  I don't know the name of it off the top of my

5    head, Your Honor.

6            MR. BURGASSER:  I'll go check, Your Honor.

7            THE COURT:  I can't wait around for an e-mail from

8    Mr. McCabe.

9            MS. MARANGOLA:  Perhaps we could contact Judge

10   Skretny's law clerk.

11           THE COURT:  I don't want to contact Judge Skretny.

12           MS. MARANGOLA:  Again, off the top of my head, I

13   don't know the case, Your Honor.  But I would note as the Court

14   pointed out, the jury instructions control.  And we all sat

15   down yesterday with Mr. Gillmeister and agreed on those very

16   instructions.

17           So I'd ask that those control at this point and that

18   be what is read to the jury if there is a question.

19           MR. PENDERGRASS:  Well, Your Honor, I don't think the

20   jury instruction is controlled to change the indictment.

21           THE COURT:  Well, the jury instruction is the law.

22   This is the law that came right out of Sand.  I mean, a lot of

23   times you have indictments where it says to use the conjunctive

24   and you charge in the disjunctive.  And if you charge the

25   conjunctive, many times it would be requiring every one of

1  those things even though the indictment only says in the

2  conjunctive, and.  In the charge, you always give in a

3  disjunctive, or.

4          So I don't agree with you.  I think -- I don't agree

5  with you.  I understand your argument, and I'm not saying it's

6  a bogus argument, but I don't agree with it.

7          All right.  And then I have to go -- and that could

8  have been any one of the -- of the firearms that are listed in

9  Count 3.  But then the next question is, "Was it a machine

10  gun?"  They may say no.

11          MS. MARANGOLA:  In which case he's only subject to

12  the five-year mandatory minimum as opposed to the 30-year

13  mandatory minimum which accompanies the machine gun.

14          THE COURT:  Okay.  All right.

15          MS. MARANGOLA:  Thank you, Your Honor.

16          THE COURT:  You've got until 2:15 to have an answer.

17          MS. MARANGOLA:  Yes, Your Honor.

18          (A recess was taken at 2:14 p.m.)

19

20          THE COURT:  All right.  Anything further?

21          MS. MARANGOLA:  No, Your Honor.

22          MR. PENDERGRASS:  Your Honor, just that I have not

23  had an opportunity, nor have I been provided with the case law

24  that the -- the prosecutors have faxed over to the Court.  So I

25  have no absolutely no clue as to what it says, nor have I had

an opportunity to shepardize it or find case law that would be counter to that case law.

But other than that, my position relative to my arguments previously stated on the record still stand.

THE COURT: Well, I think it's pretty clear that cases involving multiple firearms, the courts have found firearms is a means, not an element of committing unlawful possession, one firearm is sufficient. And I think that's -- and I -- and the charge that I gave that clearly indicates that. So that's what I'm going to charge.

All right. Bring the jury back.

MR. PENDERGRASS: Your Honor, I would just ask what case law is Your Honor referring to?

THE COURT: Well, I got this e-mail, and you can take a look at this e-mail that I got, and I'm not really -- the cases that -- I guess the main case they're citing is U.S. versus DeJohn (phonetic), and I'm not -- to me, it's my own -- my own research itself, but this is what the government sent to me so you can see this.

But I'm relying on my own research that it's a -- it's the means and not an element and that one firearm is sufficient.

All right. Bring the jury in.

(Jury present in the courtroom at 2:28 p.m.)

THE COURT: Good afternoon, folks. I'm referring now

to Court Exhibit Number 7 which is, "As to Count 3, do we need to be unanimous as to all the guns possessed by Mr. Howard?"

At page 116 of the jury instructions, again, you're reminded to include all the jury instructions, not to single out any one. It states there, and you have it, "The second element the government must prove beyond a reasonable doubt is the defendant knowingly possessed a firearm" -- it's in the singular -- "in furtherance of the commission of the crime charged in Counts 1 and 2. To prove that the defendant knowingly possessed a firearm in furtherance of the crime, the government must prove the defendant had possession of the firearm and that such possession was in furtherance of that crime."

Then it goes on to say, "Possession means that the defendant either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and the power and intention to exercise control over the firearm. To possess a firearm in furtherance of the crime means that the firearm helped, forwarded, advanced or promoted the commission of the crime. The mere possession of a firearm at the scene of the crime is not sufficient under the definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied.

"To satisfy this element, you must also find the defendant carried or used a firearm knowingly. This means that

he carried the firearm purposely and voluntarily and not by any accident or mistake.  It also means that he knew that the weapon was a firearm as we commonly use the word.  However, the government is not required to prove the defendant knew that he was breaking the law."

And the second part is that, "In addition, you must determine whether one of the firearms possessed in furtherance of the drug trafficking crime was a machine gun."

Now, the term machine gun is defined in the statute. That's the second question on the -- is defined in the statute as, "Any weapon which shoots, is designed to shoot, or can be readily restored to shot automatically more than one shot without manually being reloaded by a single function of the trigger.  Trigger is any mechanism used to initiate the firing sequence.

"The term firearm also includes the frame or receiver of any such weapon, any part designed and intended exclusively and solely or in combination of the parts designed and intended to be used in converting a weapon into a machine gun, and any combination apart from which the machine gun can be assembled if the parts are in possession or under the control of the person.

"The verdict form, which will be given to you, requires you to specify in the event of a guilty verdict on Count 3 whether the defendant possessed a machine gun in

furtherance of the drug trafficking crime as charged in
Counts 1 and 2 of the indictment.  Your determination as to
whether the defendant possessed a machine gun in furtherance of
the drug trafficking must be based upon unanimous finding
beyond a reasonable doubt."  Okay?

All right.  Thank you very much.  The Court will be
in recess.

THE CLERK:  All rise.

MR. PENDERGRASS:  Judge, before you go, I just need
to make an argument on the record.

THE COURT:  All right.  Go ahead, ladies and
gentlemen.

(Jury not present in the courtroom at 2:32 p.m.)

THE COURT:  All right.

MR. PENDERGRASS:  Thank you, Your Honor.  Just I'd
like the Court to note my objection on the record relative to
the position just reached by the Court.

THE COURT:  All I did was read the charge which you
agreed to.

MR. PENDERGRASS:  Well, relative to a firearm.

THE COURT:  That's the way the charge is read.  It
says firearm.  And that's the law.

MR. PENDERGRASS:  Well, and I don't think the jury --
the jury instructions were to obfuscate what the indictment
says.  And the indictment in this case says what it says.

1          But, more importantly, Your Honor, with regards to

2    Count 3, the -- the count of the indictment says that on or

3    about November 16th, 2011, that my client possessed specific

4    guns in furtherance of this conspiracy.

5          THE COURT:  It said including.

6          MR. PENDERGRASS:  Excuse me?

7          THE COURT:  It said including.

8          MR. PENDERGRASS:  No, it says a machine gun, a

9    Haskell model semiautomatic pistol, and a Rossi model

10   38-caliber.  Those -- those charges are specific to what they

11   are alleging he possessed on November 16th -- on or about

12   November 16th, 2011, not -- not because -- what's confusing

13   about it, and it may be confusing to the jury, is that 2009 he

14   possessed a weapon which he was convicted of, right, and they

15   are not talking about the -- that -- the charge -- the -- on

16   Count Number 3 is not referencing his possession of a weapon in

17   2009, which they are alleging today as part of the conspiracy.

18          Count Number 3 is referencing the three weapons that

19   were in the Hummer at 93 Elmer.  And I just wanted to make sure

20   that that was clear for the record and that the -- the jury

21   could be confused by what guns they are actually considering

22   relative to the -- to this charge.

23          THE COURT:  Ms. Marangola?

24          MS. MARANGOLA:  I don't think there's anything

25   confusing about that, Your Honor.  And their note didn't

1    indicate that they were confused.  Your Honor, the note that

2    was sent from the jury to this Court didn't indicate that they

3    were confused about guns from 2009.

4          The indictment was very clear that Count 3 referenced

5    only what was located in his Hummer.  So I don't think there

6    would be any confusion to clear up at this point.

7          THE COURT:  Thank you.  Stick around, ladies and

8    gentlemen.

9          (A recess was taken at 2:35 p.m.)

10

11          THE COURT:  All right.  You saw the note which is 8?

12          THE CLERK:  Yes.

13          THE COURT:  And basically they're talking about

14   Count 5.  "Do we need to decide if Mr. Howard knew it was a

15   machine gun?"

16          I'm just going to read portions of the elements on

17   Count 5 over to them.  I think if you read the first one, then

18   you go to the second -- the second element and read the next

19   phrase, it should answer the question for them.  That's what

20   I'm going to do.  Bring the jury in.

21          (Jury present in the courtroom at 3:35 p.m.)

22          THE COURT:  Mr. Andrijczuk, I have received another

23   note which will be marked Court Exhibit 8, and it says, "On

24   Count 5, the indictment states, Mr. Howard knowingly possessed

25   a firearm.  On count -- the jury verdict asks if he had

possession of an unregistered machine gun.  Do we need to decide if Mr. Howard knew this was a machine gun?"

If you go to the elements, I'm going to read a portion of it which I think will answer your question.

And this is page 136 of the charge, which you have. "The government must prove each of the following elements beyond a reasonable doubt.  First, that on or about the date alleged in the indictment the defendant had possession of a firearm, namely a machine gun; second, that the defendant had knowledge that what he possessed was a firearm," which refers to it in this count as a machine gun.

And then if you go to the -- you should read the whole -- take the whole instruction -- well, let me just go through the whole thing so it's not misunderstood.

Third, and it wasn't registered in the National Firearms.

The first element which the government must prove beyond a reasonable doubt is the defendant did, in fact, have possession of a firearm, a machine gun.  Okay?  That's how it's defined in this section in question under Section 5861(d). "The term firearm has a very specific meaning in this case. The government must prove that the object the defendant possessed was a machine gun.  The term machine gun means any weapon" -- then it goes on to describe what a machine gun is, okay.

And it talks about -- well, let me read it.  That way there's no misunderstanding.  "The term machine gun means any weapon that shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or a combination of parts designed and intended for the use in converting a weapon into a machine gun, and any combination of parts or from which a machine gun can be assembled if such parts are in possession or under the control of a person.  To possess means to have something within your control.  This does not necessarily mean that you must hold it physically; that is, have actual possession of it.  As long as the machine gun is within your control, you possess it.

If you find the defendant had actual possession or that he had power and intention to control the firearm," again, the machine gun, "even though it may have been in the physical possession of another, then you may find the government had proved possession.

"The law recognizes the possession may be sole or joint.  If the defendant alone possesses a firearm, that is sole possession.  If the defendant jointly with others possessed the firearm, that is joint possession.  Proof of ownership is not required, nor is the government required to

prove at the time of the receipt, possession, or transport the

defendant knew that he was breaking the law.  It is sufficient

to satisfy this element if the defendant possessed the firearm,

machine gun, voluntarily and not by accident or mistake.

"The second element which must be proved is the

defendant knowingly possess the firearm.  A person is knowingly

in possession if a possession occurs voluntarily and

intentionally and not because of mistake or accident.  The

defendant may not be convicted of possession of a firearm if he

did not intend possession.

"The government must prove, in addition, that he knew

that the evidence -- the device he possessed had all the

characteristics which make it subject to a regulation as a

firearm as just defined."

I believe that pretty much explains it to you.  Thank

you.  Return back to the jury room.

(Jury not present in the courtroom at 3:39 p.m.)

THE COURT:  All right.  Stick around.  The Court will

be in recess.

(A recess was taken at 3:39 p.m.)


(Jury present in the courtroom at 4:14 p.m.)

THE COURT:  I have received a note from the

foreperson, and it says, "We have reached a verdict."

Is that true, sir?

```
 1              THE FOREPERSON:  It is.

 2              THE COURT:  Okay.  Ms. Daniels, would you please get

 3    the verdict sheet.

 4              Ladies and gentlemen of the jury, the verdict will

 5    now be published; that is, it will now be read in open court.

 6              THE CLERK:  In the case of the United States of

 7    America versus Harold Howard, Case Number 12CR84A, Count 1.

 8    How do you find AS to the defendant Harold Howard on the charge

 9    that he conspired to possess with intent to distribute and to

10    distribute a mixture or a substance containing cocaine?

11              THE FOREPERSON:  Guilty.

12              THE COURT:  You, the jury, find that the amount of

13    the mixture or substance containing cocaine was?

14              THE FOREPERSON:  500 grams or more.

15              THE CLERK:  Count 2:  How do you find as to the

16    defendant Harold Howard on the charge that he possessed with

17    intent to distribute a mixture or a substance containing

18    cocaine?

19              THE FOREPERSON:  Guilty.

20              THE COURT:  You, the jury, find that the mixture or

21    substance containing cocaine was?

22              THE FOREPERSON:  500 grams or more.

23              THE CLERK:  Count 3:  Count 3 charges that -- Count 3

24    charges the defendant Harold Howard with possession of firearms

25    in furtherance of drug trafficking offenses as charged in
```

Counts 1 and 2 of the indictment. How do you find on Count 3 as to the defendant Harold Howard?

THE FOREPERSON: Guilty.

THE CLERK: Do you find that a firearm possessed in furtherance of drug trafficking offenses as charged in Counts 1 and 2 of the indictment was a machine gun?

THE FOREPERSON: Yes.

THE CLERK: Count 4. Count 4 charges the defendant Harold Howard with being a felon in possession of a firearm or ammunition. How do you find on Count 4 as to the defendant Harold Howard?

THE FOREPERSON: Guilty.

THE CLERK: Count 5. Count 5 charges the defendant Harold Howard with possession of an unregistered machine gun. How do you find on Count 5 as to the defendant Harold Howard?

THE FOREPERSON: Guilty.

THE COURT: Ladies and gentlemen, you will now be polled. That is that the deputy court clerk will ask each of you individually whether the verdict reported by the foreperson is your each individual verdict.

THE CLERK: Juror Number 1, if your verdict agrees with the verdict reported by the foreperson, answer yes. If your verdict does not agree with the verdict reported by the foreperson, answer no. Does your verdict agree in all respects?

1          JUROR NUMBER 1:  Yes, correct.

2          THE CLERK:  Juror Number 2, If your verdict agrees

3   with the verdict reported by the foreperson, answer yes.  If

4   your verdict does not agree with the verdict reported by the

5   foreperson, answer no.  Does your verdict agree in all

6   respects?

7          JUROR NUMBER 2:  Yes.

8          THE CLERK:  Juror Number 3, if your verdict agrees

9   with the verdict reported by the foreperson, answer yes.  If

10  your verdict does not agree with the verdict reported by the

11  foreperson, answer no.  Does your verdict agree in all

12  respects?

13         JUROR NUMBER 3:  Yes.

14         THE CLERK:  Juror Number 4, if your verdict agrees

15  with the verdict reported by the foreperson, answer yes.  If

16  your verdict does not agree with the verdict reported by the

17  foreperson, answer no.  Does your verdict agree in all

18  respects?

19         JUROR NUMBER 4:  Yes.

20         THE CLERK:  Juror Number 5, if your verdict agrees

21  with the verdict reported by the foreperson, answer yes.  If

22  your verdict does not agree with the verdict reported by the

23  foreperson, answer no.  Does your verdict agree in all

24  respects?

25         JUROR NUMBER 5:  Yes.

1          THE CLERK:  Juror Number 6, if your verdict agrees

2     with the verdict reported by the foreperson, answer yes.  If

3     your verdict does not agree with the verdict reported by the

4     foreperson, answer no.  Does your verdict agree in all

5     respects?

6          JUROR NUMBER 6:  Yes.

7          THE CLERK:  Juror Number 7, if your verdict agrees

8     with the verdict reported by the foreperson, answer yes.  If

9     your verdict does not agree with the verdict reported by the

10    foreperson, answer no.  Does your verdict agree in all

11    respects?

12         JUROR NUMBER 7:  Yes.

13         THE CLERK:  Juror Number 8, if your verdict agrees

14    with the verdict reported by the foreperson, answer yes.  If

15    your verdict does not agree with the verdict reported by the

16    foreperson, answer no.  Does your verdict agree in all

17    respects?

18         JUROR NUMBER 8:  Yes.

19         THE CLERK:  Juror Number 9, if your verdict agrees

20    with the verdict reported by the foreperson, answer yes.  If

21    your verdict does not agree with the verdict reported by the

22    foreperson, answer no.  Does your verdict agree in all

23    respects?

24         JUROR NUMBER 9:  Yes.

25         THE CLERK:  Juror Number 10, if your verdict agrees

1   with the verdict reported by the foreperson, answer yes.  If

2   your verdict does not agree with the verdict reported by the

3   foreperson, answer no.  Does your verdict agree in all

4   respects?

5                   JUROR NUMBER 10:  Yes.

6                   THE CLERK:  Juror Number 11, if your verdict agrees

7   with the verdict reported by the foreperson, answer yes.  If

8   your verdict does not agree with the verdict reported by the

9   foreperson, answer no.  Does your verdict agree in all

10  respects?

11                  JUROR NUMBER 11:  Yes.

12                  THE CLERK:  Juror Number 12, if your verdict agrees

13  with the verdict reported by the foreperson, answer yes.  If

14  your verdict does not agree with the verdict reported by the

15  foreperson, answer no.  Does your verdict agree in all

16  respects?

17                  JUROR NUMBER 12:  Yes.

18                  THE COURT:  The courtroom deputy will file and record

19  the verdict.

20                  Ladies and gentlemen, on behalf of all the parties

21  and the Court, I want to thank you very much for your service.

22  It was a relatively short trial, but I think you got an

23  exposure to what criminal cases are like in the United States

24  District Court.

25                  It's not an easy job.  There's no question about it.

1   It's a very difficult job, but it's a very important part of

2   our system of justice that 12 individuals that don't know each

3   other, that aren't involved in law enforcement, that come in

4   here and to the best of their ability, based on their fairness

5   and their impartiality and the evidence and the law, render a

6   fair and just verdict under all the circumstances. I want to

7   thank you very much.

8       You'll be excused. You don't have to talk about the

9   case if you don't want to. You can. It's up to you. You

10   never have to explain your verdict to anyone. And I will

11   probably see you again in a couple years.

12       Have a nice afternoon, folks, and thank you very much

13   for your service.

14       (Jury discharged.)

15       THE COURT: The defendant Harold Howard has been

16   found guilty of Counts 1, 2, 3, 4, and 5. His sentencing will

17   be scheduled for May 30th at 12:30.

18       MR. PENDERGRASS: Your Honor, I need to make an

19   argument before the jury goes.

20       THE COURT: An argument on what, Mr. Pendergrass?

21       MR. PENDERGRASS: With regards to Count 1 of the

22   indictment. I think that their -- their verdict is repugnant

23   here.

24       THE COURT: Well, you file papers, and we'll read

25   your papers at the appropriate time. You have the time to file

1  any motions.  We're not going to hear any motions at this time.

2  And we'll give the government a chance to respond in writing to

3  any motions that you wish to make regarding the verdict.

4          The sentencing will be scheduled for May 30th at

5  12:30.  A written presentence report will be prepared by the

6  probation office to assist the Court in imposing sentence.

7  The -- Mr. Howard will have an opportunity to meet with the

8  probation officer to provide information in that report.

9  Mr. Pendergrass should be present during any interview.

10          You'll receive a copy of the report.  You'll be able

11  to file any additional information, any motions, or any

12  objection or any memorandums that are consistent with the

13  evidence presented here.  And at the time of the sentencing the

14  defendant as well as counsel and the government will be allowed

15  to address the Court and say anything they wish to say in

16  mitigation or aggravation of the sentence.

17          All motions -- I think you have ten days in which to

18  file motions under the rules.  I believe it's ten days.  So

19  file any papers that you have within ten days.  The government

20  will have ten days in which to respond.  And we'll schedule, if

21  necessary, oral argument, if I feel it's appropriate.

22  Otherwise, I will take the matter under advisement.

23          The Court will be in recess.

24          MS. MARANGOLA:  Your Honor, the defendant -- Your

25  Honor, the defendant is a state-sentenced prisoner.  So I

1  believe he has the right at this point to choose if he'd like

2  to stay in state custody or remain in federal custody at this

3  time.

4  THE COURT:  Mr. Pendergrass?

5  Here's the scheduling for filing all papers.  You'll

6  get a copy of the dates here.

7  THE CLERK:  The initial presentence report will be

8  due April 15th.  The statement of the parties with respect to

9  sentencing factors and objections, if any, and motions, if any,

10  will be due May 9th.  Responses to any objections or responses

11  to any motions will be due May 16th.  Any motion to adjourn the

12  sentencing date will be due May 20th.  The final presentence

13  report will be due May 23rd.  And any character letters and or

14  a sentencing memorandum in support of the defendant will be due

15  May 23rd.

16  THE COURT:  Mr. Pendergrass, what is your pleasure as

17  far as whether you want to -- do you want to talk to your

18  client for a few minutes?

19  MR. PENDERGRASS:  If you wouldn't mind, Your Honor.

20  Thank you.

21  THE COURT:  Sure.

22  MR. PENDERGRASS:  Your Honor, at this time -- may I

23  proceed, Your Honor?

24  THE COURT:  Yes.

25  MR. PENDERGRASS:  At this time, it's my client's

1    preference to be transferred to federal custody.

2          THE COURT:  All right.  He'll be held in federal

3    custody pending the next court appearance.

4          All right.  The Court will be in recess.

5          MR. BURGASSER:  Thank you, Your Honor.

6          (Concluded at 4:28 p.m.)

7                     *    *    *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1         CERTIFICATION

2

3    I certify that the foregoing is a correct

4 transcription of the proceedings stenographically recorded by

5 me in this matter.

6

7

8           S/Yvonne M. Garrison, RPR

9            YVONNE M. GARRISON, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25