UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HAROLD HOWARD,                                    Case # 12-CR-00084-RJA
                                                          17-CV-00275-FPG
                                   Petitioner,

                v.                                    DECISION AND ORDER

UNITED STATES OF AMERICA,

                                   Respondent.

## INTRODUCTION

Harold Howard ("Howard"), a prisoner in federal custody, instituted this action by filing a *pro se* Motion to Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("§ 2255"). ECF No. 136. He has also filed motions to compel discovery (ECF Nos. 144, 147, 149, 156); motions to amend the § 2255 motion (ECF Nos. 148, 154); motions to appoint counsel (ECF Nos. 151, 153); and a motion to strike (ECF No. 183). For the reasons set forth below, the motions to compel discovery (ECF Nos. 144, 147, 149, 156) are DENIED; the motions to amend the § 2255 motion (ECF Nos. 148, 154) are GRANTED; the motions to appoint counsel (ECF Nos. 151, 153) are DENIED; the motion to strike (ECF No. 183) is GRANTED; and the claims in the § 2255 motion (ECF No. 136) and the motions to amend (ECF Nos. 148, 154) are DENIED.

## BACKGROUND

### I.    Indictment and Summary of Relevant Trial Testimony

On March 6, 2012, a grand jury returned an indictment, ECF No. 1,  charging Howard with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine) (count 1); 21 U.S.C. § 841(a)(1), (b)(1)(B) (possession with intent to distribute 500 grams or more of cocaine) (count 2), 18 U.S.C. § 924(c), (c)(1)(B)(ii) (possession of a firearm in furtherance of a drug trafficking felony) (count

3), 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of firearms and ammunition) (count 4), and 26 U.S.C. §§ 5841, 5845(a)(6), 5845(b), 5861(d), and 5871 (possession of an unregistered machine gun) (count 5).

During the seven-day jury trial conducted by U.S. District Judge Richard J. Arcara in February 2013,[1] the Government introduced evidence that Howard was a cocaine trafficker operating a large-scale business in Atlanta, Georgia, and Buffalo, New York. One of Howard's co-conspirators, Myron Johnson ("Johnson") testified for the Government that Howard traveled to Atlanta two to three times per month; on each trip, Howard bought three to four kilograms of cocaine at $30,000 per kilogram. He then transported it to New York where he broke it down into 125-gram ("eight ball") and 250-gram ("quarter key") quantities to sell in the Buffalo market.

In November 2009, New York State Trooper David Gandy ("Gandy") and his partner conducted a traffic stop of a vehicle driven by Howard. Detecting a strong odor of marijuana in the vehicle, Gandy decided to search the vehicle, initially using a trained dog. After the dog alerted to the presence of narcotics, the officers retrieved three eight balls of crack cocaine and a loaded Glock pistol[2] inside the car. Forensic testing indicated that Howard could not be excluded from the pool of major DNA contributors found on the firearm.

On November 16, 2011, Erie County law enforcement officers went to 43 Ruspin Street in Buffalo to execute a search warrant at the upper apartment. While they were there, they saw Johnson and Howard pull into the residence in Johnson's Jeep. After encountering Johnson near the lower apartment, and having seen marijuana in plain view while speaking with Johnson's

---

[1] The trial transcripts are docketed at ECF Nos. 125 to 130.

[2] Based on this incident, Howard was indicted and subsequently convicted on January 30, 2013, of second-degree criminal possession of a weapon and fourth-degree criminal possession of a controlled substance. *People v. Howard*, 129 A.D.3d 1469 (4th Dep't 2015).

mother at the lower apartment, the officers obtained a search warrant for the lower apartment and Johnson's Jeep. During the search of the lower apartment, the officers found a heat sealer, approximately $50,000 in a heat sealed package, a money counter, and cocaine divided into five heat sealed packages. One package found inside 43 Ruspin weighed one-half kilogram, two packages weighed one-quarter kilogram each, one package weighed 78 grams, and one weighed 24 grams. The officers also found a firearm and ammunition. In Johnson's Jeep, the officers located an additional one-quarter kilogram of cocaine in two packages.

Law enforcement officers then obtained a search warrant for 93 Elmer Street and its detached garage, based in part on Johnson's *in camera* testimony that Howard had purchased the property to use as a stash house but titled it in the name of his girlfriend. It appeared to the officers that no one was living at 93 Elmer Street. The only evidence of criminal activity found inside the house was a heat sealer. Inside the detached garage, officers located a 2008 Hummer H2 registered to Howard. Keys to 93 Elmer, the detached garage, and the 2008 Hummer were located on a key ring found in Howard's pants pocket when he was arrested.

After obtaining a search warrant, law enforcement officers seized three wrapped kilograms of cocaine, three loaded firearms, and assorted ammunition from the Hummer. Johnson testified that Howard regularly used firearms in connection with his drug-trafficking business and carried a firearm for protection. One of the firearms retrieved from the vehicle was an SWD Incorporated M-11/9 fully automatic machinegun. According to Johnson, Howard acquired the machine gun to kill a specific person who had "snitched" on him in the past.

## II.    Jury Verdict, Motion for a New Trial, and Sentencing

On February 14, 2013, the jury returned verdicts of guilty on counts 2 through 5 as charged and, on count 1, for a lesser included offense based on a smaller amount of cocaine (500 grams or more versus the 5 kilograms or more charged in the indictment).

Howard moved for a new trial, ECF Nos. 79, 81, which the Government opposed, ECF No. 82. Judge Arcara denied the motion in a written decision and order entered June 7, 2013. ECF No. 90.

On July 18, 2013, Judge Arcara sentenced Howard principally to a term of imprisonment of 420 months (35 years). ECF Nos. 96, 114 (sentencing transcript).

## III.    Direct Appeal

Howard pursued a direct appeal, arguing that the Court abused its discretion in making a number of evidentiary rulings; the prosecutor committed misconduct by making a misstatement of law during summation; and the Court committed plain error by admitting certain expert testimony. The Second Circuit rejected these arguments on the merits and affirmed the conviction on February 8, 2016. *United States v. Howard*, No. 13-3110(L), 14-1086-cr(Con), 639 F. App'x 686 (2d Cir. 2020) (summary order); *see also* ECF No. 134 (mandate).

## IV.    The § 2255 Proceeding

In his initial § 2255 motion, ECF No. 136, Howard asserts the following grounds for relief:

- Ground One, ECF No. 136 ¶ 12(A): The trial court wrongly permitted Johnson to refuse to answer defense counsel's questions by invoking the Fifth Amendment;

- Ground Two, *id.* ¶ 12(B): The prosecutor "should have enhanced / corrected the record to reflect" that Johnson "had an agreement of immunity from prosecution," "rendering his invocation of the 5th Amendment a meaningless ploy that the prosecutor thereby joined;"

- Ground Three, *id.* ¶ 12(C): The trial court "improperly prevent[ed] defense from establishing Myron Johnson's false statements through the arresting officer;"

- Ground Four, *id.* ¶ 12(D): The trial court "improperly admit[ed] hearsay testimony of unavailable declarant," Andre Willis;

- Ground Five, *id.* ¶ 12(E): The prosecutor erroneously misstated the law of conspiracy during closing argument;

- Ground Six, *id.* ¶ 12(F): The jury was not properly charged as to counts one, three, and five because the jury instructions constructively amended the indictment;

- Ground Seven, *id.* ¶ 12(G): The conviction was obtained by the Government's introduction of "[e]xaggerated and [c]ontrived DNA testimony;"

- Ground Eight, *id.* ¶ 12(H): The Government failed to comply with its obligations under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), "to disclose favorable evidence to the defense, namely, an immunity agreement with Johnson;" and

- Ground Nine, *id.* ¶ 12(I): Appellate counsel failed to raise the following claims: (1) the ineffective assistance of trial counsel claims referenced in ¶ 13 of the § 2255 motion, ECF No. 136, namely, that trial counsel was ineffective in failing to object to suppression hearing decision, *id.* ¶ 13(1); failing to object to Sergeant Joe Pitts's testimony of "uncharged acts that predated the indictment and prejudiced the jury," *id.* ¶ 13(2); failing to object to the weapons expert's findings that the gun in question was a machine gun, *id.* ¶ 13(3); and failing to have the machine gun examined to see if it was "altered or malfunctioned," *id.* ¶ 13(4); and (2) the introduction of the special verdict sheet impermissibly amended the indictment by changing the amount charged in count 1 from 5 kilograms to 500 grams.

Respondent filed a response and memorandum of law with exhibits, ECF No. 140. Howard filed a traverse. ECF No. 141.

Howard then filed a number of requests for discovery. ECF Nos. 144 ("Motion to Unseal Documents"), 147 ("Motion for an Order Compelling a Hearing to Unseal Documents"), 149 ("Motion for Court Order to Release Document No. 94 Court Exhibits"), 156 ("Motion to Compel"). He also filed multiple motions to appoint counsel, ECF Nos. 151 ("Motion to Appoint Counsel, Motion for New Trial"), 153 ("Motion to Appoint Counsel, Motion for Order to Show Cause"); and to supplement the § 2255 motion, ECF Nos. 148 ("Notice of Motion to Amend 2255 Motion to Vacate"), 154 ("Motion for Leave to Supplement § 2255 in [light] of *Rehaif*"). Respondent filed a response in opposition, ECF No. 162, that addressed ECF No. 154, the motion to supplement. Howard filed a traverse, ECF No. 169, followed by a motion for a temporary stay of the proceedings, ECF No. 171.

On August 17, 2020, Judge Arcara issued a text order, ECF No. 172, directing Howard to supplement his motion for copies of docket items, ECF No. 156, by submitting a list of the docket items that he still needed to prosecute his § 2255 motion.

On February 18, 2021, Respondent responded to ECF No. 156, the motion to compel. ECF No. 175.

Howard filed a motion to have the Court compel his trial counsel to provide him with the complete defense file. ECF No. 176. Howard supplemented this motion about a month later. ECF No. 179. About a month after that, Howard filed a motion to hold the § 2255 motion in abeyance based on the Supreme Court's grant of *certiorari* in two cases which "confront § 922(g)(1)" and "will aid this Court in its decision." ECF No. 180. In a text order dated April 23, 2021, the Court (Arcara, D.J.) denied the request to hold the case in abeyance until the Supreme Court's decisions were released, but agreed to an abeyance pending further order of the Court. ECF No. 181.

Howard filed a reply, ECF No. 182, to Respondent's response, as well as a motion to strike that response, ECF No. 183, on the basis that it supplemented, without the Court's permission, the memorandum of law in opposition to the § 2255 motion. Respondent did not respond to the motion to strike.

**DISCUSSION**

**I.    The Motions to Amend: ECF Nos. 148 and 154**

*A. ECF No. 148*

ECF No. 148 appears to be substantially the same as the original § 2255 motion, ECF No. 136. It is unclear why Howard thought it necessary to file ECF No. 148, and his notice of motion provides no explanation. Despite being specifically directed to respond to ECF No. 148, the Government never did so. Because ECF No. 148 does not appear to raise any new claims or factual

allegations not raised in the original motion, accepting it for filing will have no effect on the outcome of this case. Therefore, the Court GRANTS Howard's request to amend, ECF No. 148.

    B.  ECF No. 154

    The second motion to amend, ECF No. 154, requests leave to add a claim based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  In *Rehaif*, the Supreme Court held that in a prosecution for possession of a firearm by a restricted person in violation of 18 U.S.C. §§ 922(g)[3] and 924(a), "the word 'knowingly' [in 18 U.S.C. § 924(a)(2)] applies both to the defendant's conduct and to the defendant's status," and therefore "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2194, 2200. Howard asserts that the Government, "in securing the indictment, failed to establish probable cause regarding whether Howard 'knew' that he was purportedly in a case class of of [sic] individuals who, according to 18 U.S.C. § 922(g)(1), were prohibited from possessing a firearm." ECF No. 154 at 2. Therefore, Howard concludes, the "indictment failed to charge an offense." *Id.* In addition, Howard claims he is "actually innocent of § 922(g)(1)." *Id.*

    Respondent does not address ECF No. 154 as a motion to amend but treats it as a "supplemental" § 2255 motion, arguing that the *Rehaif* claim is subject to an unexcused procedural default because it could have been raised on direct appeal and that, in any event, it is without merit. The Second Circuit has held that where, as here, a § 2255 motion is filed *before* adjudication of an

---

[3] *Rehaif* did not involve a conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), as is the case here. Instead, the defendant in *Rehaif* was charged with possessing a firearm while being a noncitizen "illegally or unlawfully in the United States" in violation of 18 U.S.C. § 922(g)(5). *Rehaif*, 139 S. Ct. at 2194 (quoting 18 U.S.C. § 922(g)(5)(A)). "*Rehaif* makes clear, however, that its holding applies equally to all violations of section 922(g), including being a felon in possession." *United States v. Sumlin*, No. 18-CR-682 (SHS), 2020 WL 3318207, at *1 (S.D.N.Y. June 18, 2020) (citing *Rehaif*, 139 S. Ct. at 2194).

initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion, and evaluate it pursuant to Fed. R. Civ. P. 15. *Ching v. United States*, 298 F.3d 174, 177, 180 (2d Cir. 2002).

"A motion to amend a § 2255 petition . . . is subject to § 2255's one-year statute of limitations[.]" *Story v. United States*, No. 217CV00144JRGCRW, 2020 WL 6141047, at *8 (E.D. Tenn. Oct. 19, 2020) (citing *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008) ("Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations. *See* 28 U.S.C. § 2244(d); § 2255(f). Consequently, a Rule 15 motion will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)(2).") (citations omitted)). Since Respondent has not recognized ECF No. 154 as a motion to amend, it has not addressed the timeliness of the proposed *Rehaif* claim.

"[T]he one year deadline the AEDPA imposed on the filing of section 2255 petitions . . . established a statute of limitations and is not a jurisdictional bar." *Green v. United States*, 260 F.3d 78, 82 (2d Cir.2001) "[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a . . . habeas petition," *Day v. McDonough*, 547 U.S. 198, 209 (2006), provided the parties are given "fair notice and an opportunity to present their positions." *id.* at 210. "Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* (quotation and footnote omitted). In light of the fact that Respondent has not asserted the statute of limitations as a defense, and given amount of time this matter has been pending, the Court finds that the interests of justice and judicial efficiency would be better served by addressing the proposed amended claims on the

merits. Accordingly, the Court will GRANT the motion to amend the petition, ECF No. 154, to add the *Rehaif* claims. However, as discussed below, they are without merit.

Howard's first *Rehaif*-based argument is that count 4 of the indictment failed to charge a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) because it did not allege the requisite *mens rea* element. Accordingly, Howard concludes, his conviction on count 4 should be vacated and dismissed. Respondent argues that this claim is foreclosed by the Second Circuit's decision in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019). The Court agrees.

In *Balde*, the defendant had pled guilty to a violation of § 922(g)(5), unlawful possession of firearm by an "alien [who was] illegally or unlawfully in the United States." He asserted that, following *Rehaif*, the indictment failed to allege a federal crime and that this defect deprived the district court of jurisdiction. 943 F.3d at 88. The Circuit noted that "in order to sufficiently charge a crime, an indictment must 'do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id.* at 89 (quotation omitted; ellipsis in original). In Balde's case, the indictment did just that, albeit without "expressly charg[ing] that [he] was aware that his . . . immigration situation rendered him 'illegally or unlawfully in the United States[.]'" *Id.* But, as the Circuit observed, "the language of the statute itself, which the Supreme Court held to require such knowledge, [does not] expressly reference that state of mind." *Id.* at 90.

The Circuit concluded that "*Rehaif*'s knowledge requirement" describes "*how* the statute would be violated, which is ultimately a merits question and not one that affects the jurisdiction of the court to adjudicate the case." *Id.* at 90 (citation omitted; emphasis supplied). Therefore, the Circuit stated, "an indictment that does not clearly indicate that the defendant is required to know he or she is in a prohibited category may be deficient in some way . . . , but its absence does not

mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case." *Id.* at 90-91; *accord United States v. Bryant*, 976 F.3d 165, 173 (2d Cir. 2020) ("As we held in *Balde*, omission of the knowledge-of-status requirement in a charging document does not affect the district court's jurisdiction. . . . Thus, Bryant's jurisdictional argument fails.") (citing *Balde*, 943 F.3d at 92 ("[T]he indictment's failure to allege that [the defendant] knew" of his unlawful status "was not a jurisdictional defect.")). Howard's claim that the indictment is jurisdictionally defective as to count 4 is without merit.

For his second claim under *Rehaif*, Howard asserts that he is "actually innocent" of § 922(g)(1) because, to this day, he "believe[s] that under the Second Amendment he has a right to possess a firearm." ECF No. 154 at 5. To the extent Howard is claiming that he is entitled to § 2255 relief because he is actually innocent,[4] the Supreme Court has never recognized a freestanding constitutional right to vacatur of a conviction and sentence based on actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.").

A freestanding habeas claim of actual innocence—assuming for the sake of argument that such a claim is cognizable—would require an even greater showing than is required for a gateway

---

[4] "A distinction exists between claims of actual innocence used as a gateway and as a freestanding basis for habeas relief." *Farrar v. Raemisch*, 924 F.3d 1126, 1130-31 (10th Cir. 2019), *cert. denied sub nom. Farrar v. Williams*, 141 S. Ct. 234 (2020). "As a gateway, a claim of actual innocence 'enable[s] habeas petitioners to overcome a procedural bar' in order to assert distinct claims for constitutional violations." *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); footnote omitted). "Because gateway claims are 'procedural, rather than substantive,' they do not 'provide a basis for relief.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995)); *see also Hyman v. Brown,* 927 F.3d 639, 655 (2d Cir. 2019) ("Even if successful, the [actual innocence] claim cannot itself afford Hyman habeas relief from his state conviction. It can only open a gateway to federal review of an otherwise procedurally barred Sixth Amendment claim that, if itself successful, could afford him relief.") (citing *Schlup*, 513 U.S. at 314). "By contrast, a freestanding claim asserts actual innocence as a basis for habeas relief." *Id.* (citing *House v. Bell*, 547 U.S. 518, 554 (2006); other citation omitted).

claim of actual innocence. *See Herrera*, 506 U.S. at 417 (hypothesizing the existence of a freestanding actual innocence claim in a capital case and noting that "the threshold showing for such an assumed right would necessarily be extraordinarily high"). Under *Schlup*, a petitioner's burden of making a gateway showing of actual innocence is already "deliberately 'demanding.'" *Hyman*, 927 F.3d at 656 (quoting *House*, 547 U.S. at 538; citing *McQuiggin*, 569 U.S. at 386, 401 ("stress[ing] that the *Schlup* standard is demanding" and observing that cases satisfying it are "rare"); other citation omitted).

Schlup requires that "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House*, 547 U.S. at 521). "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324; citation omitted). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt— or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

The sole basis for Howard's actual innocence claim is his belief that he had a Second Amendment right to possess a firearm at the time that he was charged. ECF No. 154 at 5. Respondent characterizes this belief as incredible, pointing to numerous references in the record to Howard's criminal history. For instance, Howard stipulated at trial that, prior to November 16, 2011, he had been convicted of a crime was punishable by a term of imprisonment exceeding one year. ECF No. 162 at 7 (citing ECF No. 128 at 3). Specifically, on December 18, 1998, Howard pleaded guilty to one count of attempted first-degree assault (N.Y. Penal Law §§

110.00/120.10(1)), and was sentenced to an indeterminate term of two and one-quarter to four and

one-half years. ECF No. 162 at 2 (citing Exhibit A, ECF No. 162-1 (certificate of conviction)). In

fact, in his motion to amend, Howard acknowledges entering into the pre-trial stipulation. ECF

No. 154 at 5.

Howard suggests that the stipulation was not knowingly made and that it does not prove,

as *Rehaif* supposedly requires, that he specifically knew he was prohibited from possessing a

firearm. *See id.* Courts have rejected similar reasoning as "based on an overly-broad interpretation

of *Rehaif*." *Hunter v. Quintana*, No. CV 5:19-300-DCR, 2020 WL 50399, at *2 (E.D. Ky. Jan. 3,

2020) (petitioner "stipulated during trial that he had been convicted of three crimes punishable by

imprisonment for a term exceeding one year" and subsequently claimed that "this stipulation does

not prove that he had *knowledge* of his status as a person forbidden from possessing a firearm")

(emphasis in original). As the Supreme Court explained,

> [t]he question here concerns the scope of the word "knowingly." Does it mean that
> the Government must prove that a defendant knew both that he engaged in the
> relevant conduct (that he possessed a firearm) and also that he fell within the
> relevant status (that he was a felon, an alien unlawfully in this country, or the like)?
> We hold that the word "knowingly" applies both to the defendant's conduct and to
> the defendant's status. To convict a defendant, the Government therefore must
> show that the defendant knew he possessed a firearm and also that he knew he had
> the relevant status when he possessed it.

*Rehaif*, 139 S. Ct. at 2194. Thus, "while the Government's burden [under *Rehaif*] includes proof

that a defendant was aware of his 'relevant status,' meaning that he knew that he was 'a felon, an

alien unlawfully in this country, or the like,'" *Hunter*, 2020 WL 50399, at *2 (quoting *Rehaif*, 139

S. Ct. at 2195-96), "it does not include proof that the defendant specifically knew that he was

prohibited from possessing firearms." *Id.* (citing *United States v. Bowens*, 938 F.3d 790, 797 (6th

Cir. 2019) (refusing to adopt the defendants' argument that *Rehaif* requires the Government to

prove "they knew unlawful users of controlled substances were prohibited from possessing

firearms under federal law" under § 922(g)(3); "*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code")).

Howard does not assert that he was unaware he had pleaded guilty to a felony and served more a year in prison on that conviction; nor could he credibly do so. Indeed, the presentence investigation report ("PSR") revealed that the attempted assault conviction originally was indicted as an attempted murder and was based on Howard having fired a gun at the victim multiple times, causing severe injuries. ECF No. 97 ¶ 35. In addition, the PSR indicates that Howard served more than two and one-half years before being released to parole. *Id.*

To recap, *Rehaif* requires the Government to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Howard admittedly possessed a firearm, and the evidence is overwhelming that he knew he had "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1). Howard's "new" evidence—that he purportedly was unaware that that persons convicted of a crime punishable by more than one year in prison were prohibited from possessing firearms under § 922(g)(1)—is superfluous to the *Rehaif* analysis. *See Bowens*, 983 F.3d at 797.

In light of the abundance of evidence showing establishing Howard's guilt, there is simply no reasonable likelihood that any reasonable juror, presented with Howard's "new" evidence, would have had a reasonable doubt. Therefore, Howard has not come close to meeting *Schlup*'s standard for gateway actual innocence claims. For that reason, he necessarily cannot meet the much higher, as-yet-unarticulated threshold that the Supreme Court has said would be required for a standalone actual innocence claim, if such a claim were cognizable on habeas review.

## II.    The Discovery Motions: ECF Nos. 144, 147, 149, 176

"[W]hile § 2255 proceedings are civil in nature, discovery in habeas actions is *more limited* than in other civil cases." *United States v. Cuya*, 964 F.3d 969, 973-74 (11th Cir. 2020) (citing *Harris v. Nelson*, 394 U.S. 286, 295 (1969) (noting that "[a]t the very least, it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions" applicable to ordinary civil litigation)) (further citation omitted; emphasis in original). According to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), to obtain discovery once an action is filed, a § 2255 movant must show "good cause." *See* Section 2255 Rule 6 ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . . A party requesting discovery must provide reasons for the request."); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course[, but only] in the exercise of [the judge's] discretion and for good cause shown.") (emphasis added).

The impetus for Howard's discovery request is found in an exchange between defense counsel and Johnson wherein defense counsel unsuccessfully tried to get Johnson to divulge the names of the conspiracy's drug suppliers and customers:

> Q. Who were the sources that you knew?
> A. Who was the sources that I knew?
> Q. Yeah. You said you knew some sources. Who are they and where do they reside?
> . . .
> THE WITNESS: I would say I'm not here to get nobody else in trouble so I don't know how to answer that for you.
>      BY MR. PENDERGRASS:
> Q. Who are the sources and where do they reside?
> . . .
> A. Like I said, I'm not here to get nobody else in trouble, and I'm not about to say nothing about nobody else.

MR. PENDERGRASS: Your Honor, will you direct the witness to answer the question?

THE WITNESS [sic]: Well, that's his answer. He doesn't want to answer, that's it. That's his privilege.

BY MR. PENDERGRASS:

Q. So you're unwilling to divulge the sources that were involved in the drug trafficking enterprise here?

A. There was [sic] peoples that bought stuff from us. They're not in our indictment. They're not under charges. And I won't bring them under them.

Q. Who were the people that you sold drugs to?

A. You just asked me in a different question [than] the last one, sir.

Q. No, I didn't. Who were the people during the conspiracy that you sold drugs to? What are their names and what are their addresses?

A. You'll be told the same thing. I'm not here under oath to get nobody else in trouble, and I plead the Fifth. I'm not saying nobody else name. I have to still live on the outside, sir.

2/11/13 Tr. at 28:11 – 29:19, ECF No. 127. Defense counsel moved on to another line of questioning. Johnson never did reveal the names sought by defense counsel.

Howard asserts that Johnson's invocation of the Fifth Amendment was a "ploy" since he "clearly stated" he was "not invoking the Fifth Amendment to protect himself from prosecution, (indeed he had an immunity agreement with the government, so he could not have been prosecuted) but was invoking the Fifth Amendment to protect other drug dealers." ECF No. 182 at 3. In the next breath, Howard contends he needs discovery to "help him prove Mr. Johnson had an immunity agreement, and the scope of that agreement," which will "show that he was never in danger of self incrimination." *Id.* Howard adds that "[c]ounsel could . . . have pointed out that due to Mr. Johnson[']s agreement with the government protected him against prosecution, so, he had no right to invoke the Fifth Amendment." *Id.* Howard's argument is self-contradictory. On the one hand, he asserts that he knew Johnson had an immunity or cooperation agreement; on the other, he states that he needs discovery to prove such an agreement existed.

In any event, the Court finds that Howard has not established good cause to invoke discovery procedures because he has not shown that the information sought would be material to

the claims in his § 2255 motion and has not demonstrated that he might be entitled to relief if the facts were developed more fully through discovery. In particular, (1) he has failed to establish that Johnson's agreement with the Government was not turned over to the defense as part of pre-trial discovery; (2) the existence of Johnson's agreement was, in fact, put before the jury at trial, and the jury nevertheless accepted, at least in part, Johnson's testimony; (3) additional information about the specifics of Johnson's agreement would not provide a basis for the Court to compel him to name sources and buyers; and (4) the identities of the sources and buyers are wholly collateral to Howard's guilt or innocence of the crimes charged. The Court's ensuing analysis of the discovery request also compels the conclusion that Grounds Two and Eight are meritless.

First, Howard has failed to establish that the Government did not turn over Johnson's cooperation agreement to the defense as part of pre-trial discovery. In Ground Eight, Howard states that on May 18, 2012, the Government agreed to provide *Brady* impeachment material consisting of the "criminal arrests / records, and criminal acts perpetrated" of all the prosecution witnesses. He acknowledges "[s]aid [information] was provided but [the Government] omitted pertinent bail revocation hearings and germane acts/agreement with the principle witness Myron Johnson that could have been used to impeach him." ECF No. 136.

The May 18, 2012 submission referenced by Howard is the Government's Response to Defendant's Omnibus Motion, ECF No. 25. In it, the Government "agree[d] to provide impeachment *Brady* material, i.e., promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such[,]" and stated that it would provide this material "in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers

the Jencks Act material."[5] ECF No. 25 at 12-13. The Government represented that it was "in full compliance with its *Brady* and *Giglio* [6] obligations and will continue to abide by the obligations." *Id.* at 13.

Howard has supplied no basis for the Court to conclude that the Government failed to abide by its representations in its response to the defense omnibus motion that it would disclose Johnson's cooperation agreement along with the rest of the *Brady*/*Giglio* material in accordance with ECF No. 25. Indeed, defense counsel made no objection at the time of Johnson's testimony that, for instance, this was the first time he had heard that Johnson was cooperating against Howard. Thus, the most reasonable inference is that defense counsel was fully aware, prior to trial, of Johnson's cooperation agreement with the Government.

Next, at the beginning of Johnson's direct testimony, the prosecutor elicited from him that he was currently charged under a federal indictment; [7] that part of his testimony at Howard's trial was "in an effort to get a lessor [sic] sentence on those charges; that he "entered into an agreement with [the Government]," pursuant to which he was "required to testify." ECF No. 127 at 82-83. Over defense objection, Johnson explained that his understanding of the agreement was that if he was "dishonest" during his testimony, "all agreements is [sic] off." The jury thus was informed that Johnson was cooperating with the Government and took this into consideration during their deliberations.

---

[5] The Jencks Act, 18 U.S.C. § 3500, "provides that the statements of a government witness, which includes co-conspirators, shall not be the subject of discovery or inspection until such witness has testified on direct examination at trial." *United States v. Rosario*, No. 01 CR. 1034 (SWK), 2002 WL 413921, at *4 (S.D.N.Y. Mar. 14, 2002).

[6] *Giglio v. United States*, 405 U.S. 150 (1972).

[7] Johnson pleaded guilty on December 17, 2013, to one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). *See* Plea Agreement, *United States of America v. Myron Johnson*, No. 1:12-cr-00145-RJA-JJM, 2013 WL 9601381 (W.D.N.Y. Dec. 17, 2013).

Lastly, Howard is mistaken about the relevance of Johnson's cooperation agreement. According to Howard, presenting Johnson with the cooperation agreement would force Johnson to name sources and buyers because the agreement would prove that Johnson was not entitled to the shield offered by the Fifth Amendment. It is apparent from the transcript, however, that Johnson's refusal to answer was not based on his fear of exposing himself to further criminal prosecution—rather, he was fearful for his safety. Johnson's "pleading the fifth" was simply a colloquial way of saying he did want to, and would not, answer the question. Moreover, as Judge Arcara observed when denying Howard's motion for a new trial, "[w]hether Myron Johnson was willing to name others in the cocaine trafficking conspiracy was a general test of his credibility. *It did not bear directly on the many specific details of his testimony* about defendant Howard's participation in the conspiracy with Johnson." ECF No. 90 at 6-7 (emphasis supplied). The fact that others may also have been culpable for trafficking narcotics does not diminish Howard's role or negate his guilt. In short, the information Howard seeks is not material to the Government's ability to prove the charges on which he was convicted.

Because the discovery Howard seeks would neither resolve any pertinent factual disputes nor strengthen any of his habeas claims, the Court DENIES his motions for discovery. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("The discovery sought by Stanford would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor. To the contrary, Stanford's requested discovery, when reviewed in light of the recently examined record, falls more in the category of a fishing expedition. We will not find that a district court erred by denying a fishing expedition masquerading as discovery.").

### III.    The Motion to Strike: ECF No. 183

In his motion to strike, Howard requests that the Court decline to consider certain arguments by the Government in its response to the discovery motions. Howard asserts that "the Government is using their response in opposition to the Motion to Compel Discovery and other Materials, to input their response to his ineffective assistance of counsel claims, which they neglected in their response in opposition to [the] §2255 Motion[.]" ECF No. 183 (referring to ECF No. 175 at 1-12). Howard is correct that Respondent did not assert any argument in response to the ineffectiveness claims set forth in ¶ 13 of the § 2255 motion, ECF No. 136. Since Respondent never sought permission to supplement its opposition memorandum of law, the Court will GRANT Howard's motion to strike, ECF No. 183, and will not consider Respondent's belated arguments regarding the ineffectiveness claims asserted in ¶ 13 of the § 2255 motion. Nonetheless, this does not mean Howard is automatically entitled to relief on these claims because, as the Second Circuit made clear in *Bermudez v. Reid*, 733 F.2d 18 (2d Cir.1984), default judgment should not be granted for a habeas petitioner without a court first reaching the merits of the underlying claim. *Id.* at 21.

### IV.    The § 2255 Motion

#### A.    *Grounds One, Three, Four, Five, and Seven Were Raised on Direct Appeal and Are Barred by the Law of the Case Doctrine*

The law of the case doctrine "has several branches; one deals with decisions of a lower court that have been ruled on on appeal, and another deals with decisions that have not been ruled on on appeal." *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991). "Under the first branch of the doctrine, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." *Id.*; *accord*, *e.g.*, *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("The first [branch] requires a trial court to follow an appellate court's previous ruling on an issue in the same case.") (citations omitted). The first branch applies

whether "'issues have been explicitly or implicitly decided on appeal. . . .'" *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)).

The second branch of the law of the case doctrine reflects the "principle . . . that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case[,]" *Uccio*, 940 F.2d at 758 (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)), "unless 'cogent' and 'compelling' reasons militate otherwise[.]" *Quintieri*, 306 F.3d at 1225 (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). The second branch "is implicated when a court reconsiders its own ruling on an issue *in the absence* of an intervening ruling on the issue by a higher court." *Quintieri*, 306 F.3d at 1225 (emphasis supplied).

After reviewing Howard's appellate brief and the Second Circuit's summary order, the Court agrees with Respondent that Grounds One, Three, Four, Five, and Seven were raised and decided on direct appeal. In Howard's appellate brief, Ground One is asserted at Point D ("The trial court improperly restricted defendant's ability to crossexamine the prosecution's essential witness, Mr. Johnson, by refusing to instruct Mr. Johnson to answer questions concerning coconspirators and buyers. . . ."); Ground Three is asserted at Point A ("The Trial Court improperly prevented Mr. Howard from demonstrating that Mr. Johnson was a liar through the testimony of the police officers who heard and recorded the lies"); Ground Four is asserted at Point B ("The prosecution was erroneously permitted to introduce hearsay testimony of Andre Willis, a cooperating witness . . . ."); Ground Five is asserted at Point C ("The prosecution materially misstated the law in her closing argument"); and Ground Seven is asserted at Point E ("The prosecution should not have been permitted to put the odds of 1 in 13 quadrillion before the jury

without proper foundation. . . ."). *See* Appellant's Brief, Dkt #55 at 2-3, *United States v. Howard*, 13-3110(L), 14-1086-cr(Con) (2d Cir. May 21, 2015).

The Second Circuit considered and rejected each of these arguments on the merits. First, as to Ground One, the panel disagreed that Howard was improperly restricted in his cross-examination of Johnson because he (Johnson) was not compelled to provide names of other coconspirators and buyers. In response to defense counsel's questions, Johnson demurred by invoking the Fifth Amendment and by stating that he did not want to get others in trouble. The Second Circuit found Johnson's "refusal to answer was, in substance and effect, Johnson's answer to the question[,]" and it "did not bear directly on the many specific details of his testimony about Howard's participation in the conspiracy." *United States v. Howard*, 639 F. App'x 686, 690 (2d Cir. 2016) (summary order). Therefore, the panel concluded, the district court "did not abuse its discretion by declining to order Johnson to identify other members of the conspiracy." *Id.*

With regard to Ground Three, the panel observed that the inconsistencies in Johnson's statements "were brought out on direct examination of Mr. Johnson, who admitted that he initially denied ownership of the cocaine found in his house and that he later admitted ownership when he realized the police were going to arrest his mother instead of him." *Id.* at 688. Although Howard contended that he "was deprived of the 'special impact' of a police officer admitting that Mr. Johnson had lied," he "provide[d] no legal support that he was entitled to have this evidence introduced by one means rather than another." *Id.* at 689.

As to Ground Four, the Circuit held that it was "not error" for the prosecution to introduce hearsay evidence from Andre Willis ("Willis") [8] during the re-direct of Sergeant Joe Pitts ("Pitts")

---

[8] On cross-examination, "Howard's counsel asked the officer whether Willis told him there would be money in the car. Howard's counsel then proceeded to cross examine on the officer's inability to identify the source of the money, leaving the impression that the money may have been Willis's instead of Howard's. On re-direct, the prosecution asked if Mr. Willis said anything about the source of the money, and the officer

because it "corrected a false impression raised by defense counsel's question, and was thus within the bounds of [*United States v.*] *Rosa*[, 11 F.3d 315, 335 (2d Cir. 1993)]." *Id.* at 689 (footnote and citation omitted). As to Pitts's testimony that Willis told him he had sold multiple kilogram quantities of drugs to Howard prior to the start of the charged conspiracy, the panel held that there was no error. *Id.* Even if there had been, the error "would have been harmless" because the "verdict reflects that Howard was held accountable only for amounts seized in November 14[,] 2011—not for prior dealings with Willis," and "there was testimony from Johnson that he and Howard sold multiple kilograms of cocaine monthly throughout 2008," again, prior to the conspiracy. *Id.* at 689-90. Therefore, the panel found it "highly probable that any error in the introduction of Willis's hearsay statement did not contribute to the verdict[.]" *Id.* at 690.

In connection with Ground Five, the Circuit agreed that the prosecutor misstated the law by arguing that anybody to whom Howard sold drugs could be a coconspirator. *Id.* at 690. However, the panel held that the improper comment was not plain error, even in the absence of a curative instruction, because "the jury was properly instructed as to what constitutes a conspiracy" and, in any event, "the buyer-seller exception was not at play in this case[.]" *Id.*

As to Ground Seven, the Circuit rejected Howard's contention that the DNA expert, Thomas Grill, "lacked the necessary experience or training in statistical analysis to testify about the infinitesimal chances the genetic profile he determined was Howard's would match an unrelated individual." *Id.* at 690-91. Noting that plain error review applied since defense counsel had not challenged the expert's testimony under Fed. R. Evid. 702, the Circuit found that "[a]lthough the probability testified to by the DNA expert [was] an astounding number, nothing in defendant's appeal seriously questions the reliability of the DNA evidence[.]" *Id.* at 691.

---

testified that Willis told him that Howard was contacting Willis in an attempt to purchase four kilograms of cocaine." 639 F. App'x at 689.

The law of the case doctrine's first branch requires this Court to follow the Second Circuit's rulings on Grounds One, Three, Four, Five, and Seven. The Court may not reconsider Grounds One, Three, Four, Five, and Seven under the second, more flexible branch of the law of the case doctrine because there has been an intervening decision by the Circuit. *Quintieri*, 306 F.3d at 1225. Even assuming it could do so, Howard has not come forward with "'cogent' or 'compelling' reasons," to warrant reconsideration, such as "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice[,]'" *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (quotation omitted); *accord, e.g., Uccio*, 940 F.2d at 758.

B. *Grounds Two, Six, Eight, and Nine Are Meritless*

Respondent asserts that Grounds Two, Six, and Eight are procedurally barred because they could have been, but were not, raised on direct appeal. ECF No. 140 at 5-7. *See, e.g., DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) ("[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted.") (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998); other citation omitted). In conclusory fashion, Respondent states that Howard has not shown cause and prejudice, ECF No. 140 at 7; Respondent does not address the "actual innocence" exception to the procedural default rule. Because Grounds Two, Six, and Eight are easily resolved on the merits against Howard, the Court has elected to bypass the procedural default question in this instance. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (disclaiming any intention "to suggest that the procedural-bar issue must invariably be resolved first" in a habeas

case, and explaining that "[j]udicial economy might counsel" going directly to the merits if the merits were easily resolvable against the petitioner).

    1.   Grounds Two and Eight: Failure to Disclose Immunity Agreement with Johnson

Ground Two alleges that the prosecutor committed misconduct because, when Johnson invoked the Fifth Amendment, she failed to "correct the record" to reflect that he had a cooperation agreement. As discussed above in connection with Howard's discovery motions, the prosecutor did not conceal the existence of Johnson's cooperation agreement from the defense, the Court, or the jury. By the point in his cross-examination that Johnson refused to answer defense counsel's questions about the names of suppliers and customers, he had already admitted to the cooperation agreement, and defense counsel had touched on that subject. ECF No. 127 at 6-7, 15. Ground Two is factually baseless and without merit.

Ground Eight asserts that the Government's alleged failure to disclose Johnson's cooperation agreement violated *Brady*. Under *Brady*, the Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even absent a defense request. *Brady*, 373 U.S. at 87. Material that is "favorable to an accused" encompasses information that impeaches the credibility of Government witnesses. *Giglio*, 405 U.S. at 154-55. "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

As discussed above in connection with the discovery motions, Howard has not provided any reason to doubt that the Government complied with its *Brady/Giglio* obligations, particularly

with regard to Johnson's cooperation agreement. But, even assuming that the Government did not disclose Johnson's cooperation agreement when it turned over the other *Brady*/*Giglio* material, there was no due process violation because defense counsel had "a reasonable opportunity . . . to use the evidence in the trial," *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). As noted above, Johnson testified about his cooperation agreement at the beginning of his direct examination. Defense counsel vigorously attacked Johnson's credibility from a number of angles, including the fact that he was cooperating with the Government. Defense counsel focused on emphasizing Johnson's motivation to minimize his conduct and deflect blame for his own criminal responsibility, as well as the various inconsistencies in Johnson's grand jury and trial testimony. Defense counsel implied that Johnson was "snitching" on Howard, his childhood friend, ECF No. 127 at 82, and was "willing to lie and tell this jury whatever" he needed to in order "to get out on the street[.]" ECF No. at 15. Defense counsel urged the jury to reject Johnson's testimony based on his lack of candor with the Court about the names of the individuals involved in the conspiracy. It is clear that defense counsel had a reasonable opportunity to use the evidence in question at trial, which means that Howard is unable to establish the "suppression" element of a *Brady* claim. Therefore, Ground Eight cannot provide a basis for habeas relief.

      2.   Ground Six: Erroneous Jury Instructions and Constructive Amendment of the Indictment

Howard asserts that the Court, over defense counsel's objection, incorrectly charged the jury on "Count one (1) of indictment as 500 grams of Cocaine where said states 5 kilograms of Cocaine; thus creating a non existent crime to rule upon and convicting petitioner of a felony never indicted. . . ." ECF No. 136 ¶ 12(F). In addition, Howard notes, the verdict sheet stated that if the jury found that the Government failed to prove count 1 and count 2, the jury was to proceed no further. However, since "5 kilograms of cocaine did not exist," the jury could not have found proof

beyond a reasonable doubt as to all elements of counts 1 and 2, and therefore should not have completed the special verdict sheet.

As Howard notes, count 1 of the indictment originally charged him with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of §§ 841(a)(1), 841(b)(1)(A), and 846. He ultimately was convicted of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, a lesser included offense of the crime charged in count 1. "Other than the quantity of drugs, the elements of those offenses are identical." *United States v. Taylor*, 816 F.3d 12, 18 (2d Cir. 2016). "As other courts have recognized, such a conviction is simply a conviction for a lesser included offense of the offense charged in the indictment, which is entirely appropriate under Federal Rule of Criminal Procedure 31(c)." *Id.* (citing *United States v. Martinez*, 430 F.3d 317, 339-40 (6th Cir. 2005) ("Harris argues that constructive amendment resulted because the indictment alleged greater quantities than the jury found had been proven beyond a reasonable doubt. That is, the quantities specified in the indictment corresponded to the greatest statutory penalties under § 841(b)(1)(A), but the jury found him responsible for quantities that corresponded to the lesser penalties under § 841(b)(1)(B). We have held that this results in neither a prejudicial variance from, nor a constructive amendment to the indictment because Harris was merely convicted of a lesser-included offense and all the elements of the former necessarily include those of the latter.") (citation omitted)).

With regard to counts 3 and 5, the nature of Howard's complaint listed under Ground Six is unclear. He states that the "[j]ury sent note asking: (i) if they had to be unanimous on all weapons Count three (3); AND; (ii) as to Count five (5), if defendant had to know that the weapon was a machine gun; WHERE the weapon in question was NOT manufactured to shoot automatically

(machinegun) and was never examined to see if it had been altered or simply malfunctioned." Respondent has not responded to this particular claim. The Court notes that Howard's statements about the machinegun simply repeat his allegations made in support of his claim that trial counsel was ineffective in relation to investigating the machinegun. As discussed in that section, Howard has offered no viable basis on which trial counsel could have rebutted the firearms expert's opinion testimony.

If Howard is attempting to assert some other type of claim under the heading of Ground Six, the Court cannot discern a colorable ground for habeas relief within the vague and conclusory allegations presented. *See Flemming v. New York*, No. 06 CIV 15226 RJH HBP, 2009 WL 6325520, at *24 (S.D.N.Y. Aug. 10, 2009) (summarily dismissing purported claims that were "vague and wholly conclusory" and claims that were "so unintelligible" that they failed to "specify . . . grounds for relief" as required by the rules governing habeas proceedings), *report and recommendation adopted*, No. 06 CIV 15226 RJH HBP, 2010 WL 1328376 (S.D.N.Y. Apr. 1, 2010) .

### 3. Ground Nine: Ineffective Assistance of Appellate Counsel

#### a. *Legal Standard*

"[I]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he must show that counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) he must show that the deficient performance prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 690,

694 (1984); quotation marks omitted). "*Strickland*'s standard . . . is highly demanding[,]" *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and the defendant bears the burden of proof on both prongs, *id.* at 381.

"Although *Strickland* addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, [the Second] Circuit has also adopted the *Strickland* two-prong test in assessing the effectiveness of appellate counsel." *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992) (citation omitted). Appellate counsel does not have a duty to raise every colorable issue that could be made. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). And, it is well established that "the failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995). A reviewing court "will find appellate counsel ineffective for omitting a claim only if a defendant shows that 'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Forte v. LaClair*, 354 F. App'x 567, 569 (2d Cir. 2009) (unpublished opn.) (quoting *Mayo*, 13 F.3d at 533).

### b.  Appellate Counsel's Alleged Errors

#### 1.)  Failure to Raise Trial Counsel's Failure to Object to Report and Recommendation on the Suppression Motion  (ECF No. 136 ¶ 13(1))

Howard faults appellate counsel for not arguing that trial counsel should have filed objections to Magistrate Judge Jeremiah McCarthy's report and recommendation ("R&R"), ECF No. 61, disposing of the motion to suppress the physical evidence seized pursuant to the search warrants issued for 93 Elmer Street and the 2008 Hummer H2. *See* ECF No. 136 ¶ 13(1); *see also* ECF No. 181 at 4-6. Howard notes that the R&R recommended denial of the suppression motion because, even if there was no probable cause to issue the search warrant for 93 Elmer Street, the police officers relied on the warrant in "objective good faith." ECF No. 181 at 5 (citations omitted); *see also* ECF No. 61 at 8 ("Even if I had concluded that probable cause was lacking (and I do not),

I would nevertheless recommend denying defendant's motion to suppress, since the officers relied upon the warrant in 'objective good faith.'") (citations omitted).

Howard argues that the R&R's reliance on the objective good faith exception to probable cause "only applies when the officer who conducts the search is not the officer who obtained the invalid search warrant based on his own affidavit which contained false, misleading, stale or incomplete evidence. . . ." ECF No. 181 at 6 (citing, *inter alia*, *United States v. Berschansky*, 788 F.3d 102, 113-14 (2d Cir. 2015)). However, the cases Howard cites for the proposition that a police officer cannot rely on the good faith exception are inapposite; those cases involved a search warrant based solely on incorrect or stale information provided by the executing officer. Here, the state court judge who issued the search warrant did so after taking sworn testimony, in person, from a confidential informant who detailed his or her observations of Howard's criminal conduct at 93 Elmer Street. *See* ECF No. 61 at 6-7. Thus, the search warrant was based not only on Detective Granville's affidavit, but on live testimony from the confidential informant, whom the state court judge found to be candid and credible. *Id.* at 3-4, 7. And, Howard has not identified in Detective Granville's affidavit any "repeated erroneous and conflicting statements," *Berschansky*, 788 F.3d at 113.

Furthermore, Howard was not prejudiced by trial counsel's failure to object to the R&R's analysis of the "objective good faith" exception because there is no reasonable probability of a different result. Notably, Judge McCarthy's determination as to the applicability of the "objective good faith" exception simply provided an additional ground for denying suppression; his probable cause finding was a fully adequate basis for denial of the suppression motion. Judge Arcara adopted the R&R in full which indicates that he agreed with all of Judge McCarthy's determinations. *See* ECF No. 62 at 1 ("[F]or the reasons set forth in Magistrate Judge McCarthy's

Report and Recommendation, defendant's motion to suppress is denied."). Thus, even if the good faith exception did not apply, the probable cause finding—with which Judge Arcara agreed—provided an independent basis to deny the suppression motion. Because trial counsel was not ineffective, appellate counsel did not act in a professionally unreasonable manner in declining to challenge trial counsel's litigation of the suppression motion. Moreover, since such a claim had no likelihood of success on appeal, Howard was not prejudiced by appellate counsel's decision not to raise it.

> 2.) Failure to Raise Trial Counsel's Failure to Object to Uncharged Acts Testimony (ECF No. 136 ¶ 13(2))

Next, Howard asserts that appellate counsel should have argued that trial counsel was deficient in failing to object to Sergeant Pitts's testimony of "uncharged acts that predated the indictment and prejudiced the jury," ECF No. 136 ¶ 13(2). Sergeant Pitts testified that, during a July 2008 traffic stop, Willis told him that he had sold multiple kilogram quantities of drugs to Howard in the past. The charged conspiracy did not begin until November 2008, however.

When appellate counsel challenged the admission of Sergeant Pitts's testimony on direct appeal, the Second Circuit considered the argument notwithstanding the lack of objection. As discussed above, the Circuit found that Judge Arcara did not err in admitting the testimony and, even if it had, the error was harmless. The Circuit's ruling demonstrates that any objection by trial counsel in all likelihood would have been properly overruled, and thus Howard cannot show that he was prejudiced by trial counsel's failure to object. And, appellate counsel cannot be found ineffective for failing to raise an ineffective assistance of trial counsel claim that had no likelihood of success on appeal.

3.) Failure to Raise Trial Counsel's Failure to Object to the Firearms
Expert's Testimony (ECF No. 136 ¶ 13(3))

Howard also asserts that appellate counsel was ineffective in failing to raise a claim of ineffective assistance of trial counsel based on the failure to object to the weapons expert's findings that the gun in question was a machine gun, ECF No. 136 ¶ 13(3); and failure to have the machinegun examined to see if it was "altered or [had] malfunctioned," *id.* ¶ 13(4). Howard has not adduced any colorable basis on which trial counsel could have objected to the testimony offered by the Government's expert that the firearm in question was a machinegun. Without identifying the nature of the objection that should have been made, Howard cannot plausibly argue, and this Court cannot find, that he was prejudiced by counsel's omission.

Even assuming that trial counsel did not have the machinegun independently examined, and further assuming that the machine gun had been altered and was not functional, there was no prejudice to Howard. Title 26 U.S.C., § 5845(b), which requires a six-level sentence enhancement pursuant to U.S.S.G. § 2K2.1(a)(5), defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).

Here, the Government's firearms expert, Burt Pandolfino ("Pandolfino"), testified that the SWD Incorporated pistol was originally designed as a semi-automatic weapon but was modified to function fully automatically. As the Supreme Court has observed, "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and

tear, into a machinegun within the meaning of the Act." *Staples v. United States*, 511 U.S. 600, 615 (1994) (citing *United States v. Anderson*, 885 F.2d 1248, 1251, 1253-54 (5th Cir. 1989) (*en banc*)). Thus, the fact that the SWD Incorporated pistol was originally designed to function as a semi-automatic does not preclude it from qualifying as an automatic firearm under the statute. *See*, *e.g.*, *S.W. Daniel, Inc. By & Through Daniel v. United States*, 831 F.2d 253, 254 (11th Cir. 1987) (rejecting challenge to jury instruction stating "[t]he law also defines as machine guns those weapons which have not previously functioned as machine guns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts" and finding that the language "falls within ambit of section 845(b)") (cited with approval in *United States v. Gravel*, 645 F.3d 549, 552 (2d Cir. 2011)).

Pandolfino further testified that the pistol was fully operable at the time he examined it, and that it fired more than one shot automatically, without manual reloading, by a single function of the trigger. That testimony supported a finding that the SWD Incorporated pistol was a weapon "which shoots . . . automatically. . . ." 26 U.S.C. § 5845(b). Even assuming that, as Howard speculates, the weapon was inoperable at the time it was seized by police, it nevertheless was fully functional at the time Pandolfino examined it. As noted above, a weapon can be a machinegun if it "can be readily restored to shoot . . . automatically. . . ." *Id.*  In fact, several circuit courts have held that "even an inoperable machinegun is still a 'machinegun' within the meaning of the statute." *Gravel*, 645 F.3d at 552 (collecting circuit authority).

Howard's attack on defense counsel's handling of the prosecution's firearms expert is based on pure speculation that counsel overlooked legitimate grounds on which to call into question the expert's examination of the machinegun and his opinion as to its characteristics. Because Howard's allegations are based on surmise, he cannot show that trial counsel's

performance fell below professional norms or resulted in actual prejudice to the defense. Appellate counsel was not ineffective in declining to raise this speculative claim that was unlikely to succeed on appeal.

**4.) Failure to Object to Special Verdict Sheet for Count 1 (ECF No. 136 ¶ 13(I))**

Lastly, Howard claims that appellate counsel "failed to raise issue where Trial counsel objected to change in Count 1 (introduction of special verdict sheet) changing Indictment from 5 Kilograms (11 pounds) to 500 grams (1.1 pound): WHERE the people failed to prove the quantity of Cocaine petitioner was indicted for; thus allowing the people to change the indictment WITHOUT a superceding indictment; and convict defendant of a charge he was not indicted or tried for in direct violation of the United States Constitution." ECF No. 136 ¶ 13(I) (capital letter in original). The underlying argument regarding the alleged infirmity in the special verdict sheet is related to Ground Six. As discussed above in connection with Ground Six, the jury instruction did not amount to an impermissible constructive amendment of the indictment. It follows that the special verdict sheet based on that instruction similarly contained no error. Appellate counsel cannot be ineffective for failing to make a meritless argument.

## V.    Appointment of Counsel and an Evidentiary Hearing Are Unnecessary

If an evidentiary hearing is held in a § 2255 proceeding, "the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed." Section 2255 Rule 8(c). "No evidentiary hearing is necessary, however, if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . .'" *Martin v. United States*, 834 F. Supp. 2d 115, 139 (E.D.N.Y. 2011) (quoting 28 U.S.C. § 2255(b); citing *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir.1970) (stating that a hearing is not required "where the allegations are insufficient in law, undisputed, immaterial, vague, palpably false or patently frivolous")); *see also*

33

*Oladiji v. United States*, 953 F. Supp. 43, 45 (E.D.N.Y. 1996) ("No hearing is required when only

issues of law are raised, and no issues of fact.") (citing *Townsend v. Sain*, 372 U.S. 293, 312, 319

(1963)); Advisory Committee Note to Rule 8 of § 2255 Rules (making Advisory Committee Note

to Rule 8 of § 2254 Rules applicable).

Here, there are no factual issues requiring exploration in a hearing. Instead, the record and

pleadings on file conclusively demonstrate that Howard's claims are without merit. Accordingly,

his requests for a hearing made at various points in his § 2255 pleadings and his motions for

appointment of counsel, ECF Nos. 151, 153, are DENIED.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motions to compel discovery (ECF Nos.

144, 147, 149, 156); GRANTS the motions to amend the § 2255 motion (ECF Nos. 148, 154);

DENIES the motions to appoint counsel (ECF Nos. 151, 153); GRANTS the motion to strike (ECF

No. 183); DENIES the claims raised in the § 2255 motion (ECF No. 136) and the motions to amend

(ECF Nos. 148, 154); DENIES relief under § 2255; and DISMISSES the § 2255 motion. Howard's

requests for an evidentiary hearing are DENIED. Because Howard has not made "a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court DENIES a

certificate of appealability. The Clerk of Court is directed to close case # 17-CV-00275-FPG.

IT IS SO ORDERED.

Dated: June 30, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court